UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
VICTOR ABRAHAM,

                              Plaintiff,

         - against -

THE CITY OF NEW YORK, STEVEN LUTZ,
STEVEN ZIELINSKI, and JENNIFER HAMILTON,

                              Defendants.
------------------------------------------------------------------X

No. 22-CV-1162

**COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff Victor Abraham, by his attorneys, The Fu Firm PLLC, respectfully alleges, upon information and belief, as follows:

**PRELIMINARY STATEMENT**

1. This is a civil rights action in which Plaintiff seeks relief for the violation of his rights secured by 42 U.S.C. § 1983, the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and the laws of the State and City of New York.

2. Plaintiff was deprived of his liberty before trial due to the unlawful withholding by members of the New York City Police Department ("NYPD") of exculpatory and impeachment evidence favorable to his defense, and their creation or reliance on false or misleading evidence and argument.

3. Plaintiff was ultimately acquitted at trial, but not before he spent time in jail due to the police misconduct alleged in this complaint.

4. The City of New York is liable because Plaintiff's constitutional injuries resulted from the policies, customs and practices of the New York City Police Department ("NYPD") that were deliberately indifferent to the liberty, fair trial and due process rights of criminal defendants.

## JURISDICTION AND VENUE

5. This action arises under 42 U.S.C. §§ 1983 and 1988.

6. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343 as this action seeks redress for the violation of Plaintiff's constitutional and civil rights.

7. Supplemental jurisdiction exists over any and all state law claims that are related to the claims pursuant to 28 U.S.C. § 1367(a).

8. Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because Plaintiff's claims arose within the confines of this judicial district.

## THE PARTIES

9. Plaintiff, Victor Abraham, is a citizen and resident of the State of New York and the United States. He resides within the Eastern District of New York.

10. Defendant Steven Lutz ("Lutz" or "Det. Lutz") was at all relevant times a Detective employed by the NYPD, acting under color of State law, and who is sued in his individual capacity.

11. Defendant Steven Zielinski ("Zielinski" or "Sgt. Zielinski") was at all relevant times a Sergeant employed by the NYPD, acting under color of State law, and who is sued in his individual capacity.

12. Defendant Jennifer Hamilton ("Hamilton" or "PO Hamilton") was at all relevant times a Police Officer employed by the NYPD, acting under color of State law, and who is sued in her individual capacity.

13. Defendant City of New York (the "City") is a municipal corporation duly organized and existing under the laws of the State of New York. At all relevant times, Defendant City, acting through the NYPD, was responsible for the policy, practice, supervision, implementation, and

conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline, retention, and conduct of all NYPD personnel. In addition, at all relevant times, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obey the laws of the United States and the State of New York.

## FACTUAL ALLEGATIONS

### The October 9, 2016 Robbery of S.H.

14. On October 9, 2016, an individual named S.H. reported to the police that he was robbed by two individuals in front of 285 Heberton Avenue, Staten Island, New York. S.H. reported to the police that he was robbed by two Black males wearing hooded sweatshirts, and that one of the perpetrators displayed a handgun during the robbery.

15. Plaintiff was not involved in the October 9, 2016 robbery.

16. Defendant Steven Lutz was assigned to investigate the robbery.

17. On or around October 13, 2016, S.H. rode the S44 bus. While on the bus, S.H. saw an individual, who he believed to have been the robber with the gun, on the same bus.

18. S.H. took a photograph of this individual and sent the photograph to Det. Lutz.

19. Plaintiff did not ride the S44 bus on or around October 13, 2016, and therefore the person who S.H. saw and photographed could not have been Plaintiff.

20. Det. Lutz received and reviewed the photograph but did not add it to the case file.

21. Neither Det. Lutz nor S.H. informed the Office of the Richmond County District Attorney ("RCDA") about the S44 bus photograph until the eve of Plaintiff's criminal trial.

22. As a result, Plaintiff and his defense counsel were not aware of the photograph.

23. Det. Lutz did not turn over the photograph to the RCDA.

24. S.H. also did not turn over the photograph to the RCDA.

25. On or about October 16, 2016, S.H. viewed a photo array created by Det. Lutz.

26. The array included a photograph of Plaintiff and five "fillers."

27. S.H. identified Plaintiff as the robber with the gun.

28. The photo array identification procedure was unduly suggestive. Of the six individuals in the array, Plaintiff was the only one wearing a white shirt, while the individuals in the other photographs wore black or gray clothing.

29. On October 17, 2016, Plaintiff was arrested for the October 9, 2016 robbery.

30. On October 18, 2016, Det. Lutz conducted a lineup.

31. This lineup identification was tainted by the prior unduly suggestive photo array from just two days earlier.

32. S.H. identified Plaintiff as the robber.

33. Plaintiff was processed and held by the NYPD, then at Rikers Island, until October 27, 2016, when his family was able to post bail.

**The October 27, 2016 Attempted Robbery of A.L.**

34. On October 27, 2016, a 16-year-old individual named A.L. reported to the police that he was attacked by three individuals during an attempted robbery in front of 524 Port Richmond Avenue, Staten Island, New York.

35. The attack took place at night and while it was raining.

36. All three attackers wore sweatshirts with hoods over their heads.

37. The entire incident lasted less than ten seconds.

38. A.L. saw only one of the attackers and only for a couple of seconds.

39. Prior to the incident, A.L. was not familiar with Plaintiff.

40. Plaintiff was not involved in the October 27, 2016 attempted robbery.

4

41. NYPD officers, including Defendant Sgt. Zielinski, responded to the scene and interviewed A.L.

42. During the interview with Sgt. Zielinski, A.L. was still frightened and in emotional distress after the attempted robbery.

43. A.L. told the NYPD officers that one of the attackers was Black, tall, and skinny. He could not describe the other two attackers.

44. Sgt. Zielinski immediately showed A.L. a single photograph of Plaintiff. Sgt. Zielinski did not show A.L. any other photographs.

45. A.L. told Sgt. Zielinski that he was not sure if the person in the photograph was one of his attackers.

46. PO Hamilton was assigned to investigate the October 27, 2016 attempted robbery.

47. On October 29, 2016, A.L. went to an NYPD station to view photographs.

48. PO Hamilton conducted the viewing with A.L. using the NYPD's Photo Manager system. A.L. viewed the photographs one at a time using a computer. Plaintiff's photograph appeared as photograph #10. The exact same photograph of Plaintiff then appeared as photograph #11.

49. Plaintiff was the only individual whose photograph appeared twice in the set of photographs.

50. A.L. then identified Plaintiff as one of his assailants.

51. Plaintiff was rearrested on or around October 31, 2016.

**The Grand Jury Proceedings**

52. The individual Defendants testified at a grand jury on or around November 1, 2016.

5

53. The grand jury heard testimony that S.H. identified Plaintiff as one of the perpetrators in the October 9, 2016 robbery after the October 18, 2016 lineup and that A.L. identified Plaintiff as one of the assailants in the October 27, 2016 attack after the October 29, 2016 Photo Manager viewing.

54. However, the grand jury was not informed about the S44 bus photograph taken by S.H. or the flawed lineup procedure.

55. The grand jury was also not informed: (1) that A.L. was shown a single photograph of Plaintiff on October 27, 2016, (2) that A.L. could not identify Plaintiff with certainty after viewing the single photograph, or (3) about the flawed Photo Manager identification.

56. Without this material information that tended to show Plaintiff's innocence and/or impeached the credibility of the prosecution's witnesses, on November 2, 2016, the jury indicted Plaintiff for the October 9, 2016 robbery and the October 27, 2016 attempted robbery.

**The *Wade* Hearing**

57. On November 20, 2017, the Supreme Court, Richmond County, held a hearing to determine the admissibility of the identifications of Plaintiff.

58. In a written decision dated December 15, 2017, the Court (Garnett, J.), held that the October 16, 2016 photo array conducted by Det. Lutz with S.H. was unduly suggestive because Plaintiff was the only one depicted wearing a white shirt, while the other individuals wore dark or gray jackets or sweatshirts.

59. The Court also held that S.H.'s identification of Plaintiff in the October 18, 2016 lineup was tainted by the prior unduly suggestive photo array.

60. The Court suppressed both identifications made by S.H.

61. Even though he testified at the hearing, Det. Lutz withheld from the Court, the prosecution, and the defense that S.H. had taken and sent to him the S44 bus photograph.

62. During the hearing, the Assistant District Attorney ("ADA") admitted that Sgt. Zielinski's use of a single photograph of Plaintiff to elicit A.L.'s identification of Plaintiff as one of his assailants on October 27, 2016 was improper and unduly suggestive. The Court suppressed this identification.

63. The ADA also admitted that the Photo Manager identification conducted by PO Hamilton in which Plaintiff's photo appeared twice was unduly suggestive. The Court suppressed this identification.

64. The Court also suppressed a May 4, 2017 lineup identification made by A.L. of Plaintiff as unduly suggestive because only Plaintiff and one of the "filler" individuals wore white shirts.

**Detective Lutz Admits at Trial That He Failed to Preserve the S44 Bus Photo**

65. Plaintiff's jury trial was held in November 2018.

66. After jury selection, and on the first day of trial, the ADA revealed to Plaintiff's defense attorney that he had just learned from S.H. about the S44 bus photograph.

67. The ADA also informed Plaintiff's counsel that he did not receive a copy of the photograph from Det. Lutz, and the photograph could not be found.

68. During the trial, S.H. testified that, a few days after the robbery, he saw a person on the S44 bus who he believed was the person who had robbed him.

69. S.H. testified that this individual stood right across from him on the bus.

70. S.H. testified that he took the photograph in such a manner that the individual saw and knew that he was taking the picture.

71. S.H. testified that the individual in the photograph was not Plaintiff.

72. While he was on the stand, Det. Lutz testified that S.H. sent him the S44 bus photograph and told him that it looked like the robber with the gun.

73. Det. Lutz also admitted that he did not turn the photograph over to the RCDA and did not save a copy in the case records.

74. On November 7, 2018, Plaintiff was acquitted of the October 9, 2016 robbery of S.H. and the October 27, 2016 attempted robbery of A.L.

**Damages**

75. At the time he was first arrested, Plaintiff was 19 years old.

76. As a result of Defendants' actions, Plaintiff was incarcerated until approximately September 2017, when he was able to make bond. Thereafter, Plaintiff had to make more than a dozen court appearances before he was acquitted, and his ability to travel was restricted.

77. Plaintiff suffered and will continue to suffer mental and emotional suffering.

78. Plaintiff also suffered the loss of the services, society, companionship, and consortium of his family and friends.

79. While Plaintiff was incarcerated, he lost his Section 8 housing and experienced setbacks in his education.

80. Plaintiff also incurred legal fees and expenses.

### FIRST CLAIM FOR RELIEF

### 42 U.S.C. § 1983

### Denial of Due Process and a Fair Trial Under the Fifth, Sixth, and Fourteenth Amendments by Defendant Lutz

81. Plaintiff repeats and realleges each and every allegation set forth above.

82. At all relevant times, Plaintiff had a clearly established right, pursuant to the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, *Brady v. Maryland*, 363 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), to timely disclosure of all material information that tended to show his innocence or that impeached the credibility of the prosecution's witnesses against him.

83. The S44 bus photograph was material information that tended to show Plaintiff's innocence or impeached the credibility of S.H.'s identification of Plaintiff.

84. Det. Lutz did not disclose the existence of the S44 bus photograph to the prosecution until the eve of trial and, as a result, the defense was not aware of the photograph until the day that S.H. and Det. Lutz took the stand.

85. In addition, through his actions, Det. Lutz wholly denied the defense the use of the photograph at trial to show Plaintiff's innocence or impeach S.H.'s credibility.

86. The non-disclosure of the information favorable to the defense caused the initiation and continuation of the criminal proceedings against Plaintiff.

87. Accordingly, Defendant Lutz is liable to Plaintiff, pursuant to 42 U.S.C. §§ 1983 and 1988, for all his injuries and damages and for his attorneys' fees, costs, and expenses in bringing this action.

## SECOND CLAIM FOR RELIEF

### 42 U.S.C. § 1983

**Denial of Liberty, Due Process, and a Fair Trial Under the Fourth, Fifth, Sixth, and Fourteenth Amendments by Defendants Lutz, Zielinski, and Hamilton Through the Manufacturing of False or Misleading Evidence and Suppression of Exculpatory Evidence**

88. Plaintiff repeats and realleges each and every allegation set forth above.

9

89. An individual has a constitutional right, pursuant to the Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution, not to be deprived of his liberty based upon the deliberate preparation by a police officer and handing to a prosecutor of false or misleading evidence that would be reasonably likely to convince a jury of the individual's guilt, where such actions actually result in the individual's deprivation of liberty.

90. In addition, a criminal defendant has an analogous right to prompt disclosure by a police officer or detective, to the prosecutor, of exculpatory or other information that so undercuts the basis for the defendant's prosecution that it is likely to, or may, result in his release from custody.

91. Such information must be disclosed, among other reasons, because it would correct the false or misleading impression from other evidence that the police have provided to the prosecutor, or which the prosecutor has provided to the grand jury or to the court, regarding the strength of the prosecution's case.

92. Here, the strength of the prosecution's case was not only material to a determination whether to initiate and continue Plaintiff's prosecution, but also to the grand jury's discretionary determination whether to approve an indictment and to the court's determination whether to release Plaintiff from custody, pending trial, on reasonable bail.

93. Defendants Lutz, Zielinski, and Hamilton (the "Individual Defendants") prepared police reports and information that they knew, or should have known, were false or misleading with respect to Plaintiff's alleged involvement in the October 9, 2016 robbery and the October 27, 2016 attempted robbery.

94. Det. Lutz withheld exculpatory and/or impeachment evidence from the prosecution regarding the October 9, 2016 robbery, which in turn prevented the prosecutor from complying with his duty to provide the information to Plaintiff.

95. Det. Lutz also conducted unduly suggestive photo array and lineup identifications.

96. Sgt. Zielinski conducted an unduly suggestive single photo identification following the October 27, 2016 attempted robbery, which led A.L. to identify Plaintiff as one of the perpetrators. Sgt. Zielinski's actions tainted A.L.'s ability to thereafter accurately identify the perpetrator(s).

97. Sgt. Zielinski also failed to inform the RCDA that A.L.'s identification was equivocal.

98. PO Hamilton conducted an unduly suggestive photo identification on October 29, 2016.

99. The Individual Defendants forwarded their "evidence" to the RCDA, knowing and intending that such information would be relied upon by prosecutors in deciding whether to initiate and continue prosecution of Plaintiff, by a grand jury considering whether to indict Plaintiff, and by a court in setting bail.

100. At the same time, the Individual Defendants failed to disclose to prosecutors their knowledge of evidence tending to show that Plaintiff was innocent and that his accusers' identifications of him were unreliable.

101. Without the manufacturing of evidence and/or suppression of evidence by the Individual Defendants, the case against Plaintiff was weak because, as the Defendants knew, the complaining victims' identifications were unreliable and there was no other "evidence" tying Plaintiff to the alleged crimes.

11

102.   Therefore, the Individual Defendants' use of suggestive identification methods, Det. Lutz's withholding of evidence favorable to the defense from the prosecutor, and Sgt. Zielinski's withholding from the prosecutor the fact that A.L.'s single photograph identification was equivocal, were highly significant to the RCDA's decision whether to prosecute, the grand jury's decision whether to indict, and to the criminal court's decision in setting bail.

103.   The Individual Defendants' actions were a substantial cause of Plaintiff's prosecution, incarceration pending trial, and loss of liberty even after he was released from bail.

104.   The Individual Defendants acted deliberately, intentionally, willfully, recklessly, and/or with deliberate indifference regarding Plaintiff's constitutional rights.

105.   The Individual Defendants' actions shock the conscience.

106.   Accordingly, the Individual Defendants are liable to Plaintiff, pursuant to 42 U.S.C. §§ 1983 and 1988, for all his injuries and damages and for his attorneys' fees, costs, and expenses in bringing this action.

## THIRD CLAIM FOR RELIEF

### 42 U.S.C. § 1983

**Unreasonable Seizure Pursuant to Legal Process Under The Fourth and Fourteenth Amendments by Defendants Lutz, Zielinski, and Hamilton**

107.   Plaintiff repeats and realleges each and every allegation set forth above.

108.   By the actions described above, Defendants Lutz, Zielinski, and Hamilton, acting under color of law, deprived Plaintiff of his rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable seizure pursuant to legal process.

109.   By forwarding false or misleading information and/or withholding evidence from prosecutors that tended to show Plaintiff's innocence from the prosecution, and by failing to make

a complete and full statement of facts to the grand jury, the Individual Defendants initiated a criminal proceeding against Plaintiff.

110. There was no probable cause to prosecute Plaintiff for the October 9, 2016 robbery or the October 27, 2016 attempted robbery.

111. The criminal proceedings terminated in Plaintiff's favor.

112. Defendants acted with actual malice.

113. Accordingly, the Individual Defendants are liable to Plaintiff, pursuant to 42 U.S.C. §§ 1983 and 1988, for all his injuries and damages and for his attorneys' fees, costs, and expenses in bringing this action.

## FOURTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983

### *Monell* Liability Against the City of New York

114. Plaintiff repeats and realleges each and every allegation set forth above.

115. The foregoing violations of Plaintiff's federal constitutional rights and injuries were further directly, foreseeably, proximately, and substantially caused by conduct, chargeable to Defendant City, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiff, who are investigated, arrested, or prosecuted for alleged criminal activities by the New York City Police Department.

116. Prior to Plaintiff's arrest, policymaking officials at the NYPD implemented no or plainly inadequate policies, procedures, regulations, practices, customs, training, supervision, and discipline concerning the continuing duty of police officers and investigators to preserve and to make timely disclosure to the District Attorney's Office, during criminal investigations and prosecutions, of all material evidence or information ("*Brady* material") favorable to a person

suspected, accused or convicted of criminal conduct, including, but not limited to, evidence of innocence as well as evidence affecting the credibility of prosecution witnesses, and to refrain from making reports that, because they omitted such information, were false or misleading.

117. As a result, many NYPD officers were unaware they had any obligation to make a record of or to otherwise inform prosecutors of information that was favorable to the criminal suspect or defendant.

118. In addition, prior to Plaintiff's arrest, policymaking officials at the NYPD implemented no or plainly inadequate policies, procedures, regulations, practices, customs, training, supervision, and discipline concerning photographic and lineup identification methods that would protect the constitutional rights of the accused.

119. In addition, the New York City Police Commissioner, as well as his or her delegates, did not discipline police officers found to have been responsible for the violation of criminal suspects' or defendants' right to disclosure of favorable evidence and not to be prosecuted based upon false or misleading evidence.

120. Police officers thus understood that there would be no adverse consequence to them if they withheld favorable information from prosecutors or forwarded false or misleading evidence to prosecutors.

121. At the same time, the NYPD put substantial pressure on officers and detectives to close cases by developing probable cause and making arrests.

122. As a result, prosecutors would not be informed of evidence favorable to a suspect or defendant that was known to police and thus would be unable to comply with their own constitutional obligation to disclose such material to the defense in time to be used at bail hearings, in the grand jury, and at trial.

123. They also would be misled into relying on evidence provided to them by police that was false or misleading.

124. The aforesaid deliberate or de facto policies, procedures, regulations, practices and/or customs (including the failure to properly instruct, train, supervise and/or discipline employees with regard thereto) were implemented or tolerated by policymaking officials for Defendant City, including but not limited to, the New York City Police Commissioner, who knew (or should have known):

    a. to a moral certainty that such policies, procedures, regulations, practices and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases;

    b. that such issues either present police employees with difficult choices of the sort that instruction, training and/or supervision will make less difficult or that the need for further instruction, training, supervision and/or discipline was demonstrated by a history of police employees mishandling such situations as well as the incentives that police employees have to make the wrong choice; and

    c. that the wrong choice by such employees concerning such issues will frequently cause the deprivation of the constitutional rights of criminal suspects or defendants and cause them constitutional injury.

125. The aforementioned policymaking officials had the knowledge and the notice alleged in the preceding paragraph based upon, among other circumstances:

a. credible allegations, many substantiated by judicial decisions, finding that NYPD officers had wrongfully withheld material evidence or forwarded false or misleading evidence to prosecutors;

b. civil lawsuits, some of which resulted in substantial civil settlements, credibly alleging that police had withheld material evidence or forwarded false or misleading evidence to prosecutors;

c. numerous decisions of the United States Supreme Court, the United States Court of Appeals for the Second Circuit, the New York Court of Appeals, and the New York Appellate Division, discussing the difficult issues that regularly arise regarding photographic and lineup identification, *see, e.g.*, *Simmons v. United States*, 390 U.S. 377 (1968);

d. numerous decisions of the United States Supreme Court, the United States Court of Appeals for the Second Circuit, the New York Court of Appeals, and the New York Appellate Division, discussing the difficult issues that regularly arise under *Brady*;

e. judicial decisions directly criticizing the NYPD for failing to train and supervise officers in their *Brady* obligations and for failing to adopt adequate *Brady* disclosure policies, *see Carter v. Harrison*, 612 F. Supp. 749 (E.D.N.Y. 1985), and putting the NYPD on notice that the City could be held liable for its failure to adequately train police officers and investigators regarding their obligations to disclose evidence that favors criminal defendants under *Brady, see Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992), and *Carter v. Harrison*, supra;

16

    f.   formal reports of the N.Y.C. Comptroller's Office and the Bar Association of the City of New York criticizing the NYPD and the N.Y.C. Law Department for failing to follow up substantial civil settlements for police misconduct with disciplinary or other remedial action; and

    g.   the inherent obviousness of the need to train, supervise and discipline police officers regarding such obligations to counteract the pressure on and incentive for officers to close cases by making arrests and winning convictions.

126. Under the principles of municipal liability for federal civil rights violations, the City's Police Commissioner (and/or his or her authorized delegates), has final responsibility for training, instructing, supervising, and disciplining police personnel with respect to the investigation and prosecution of criminal matters, the documentation of information obtained during investigations, and the disclosure to prosecutors of *Brady* material.

127. The Police Commissioner, personally and/or through authorized delegates, at all relevant times had final authority, and constitutes a City policymaker for whom the City is liable, with respect to compliance by NYPD employees with the abovementioned constitutional requirements.

128. During all times material to this Complaint, the Police Commissioner owed a duty to the public at large and to Plaintiff, which he or she knowingly and intentionally breached, or to which he or she was deliberately indifferent, to implement policies, procedures, customs, practices, training, and discipline sufficient to prevent or deter conduct by subordinates violating the constitutional rights of criminal suspects or defendants and of other members of the public.

129. The aforesaid policies, procedures, regulations, practices, and/or customs of Defendant City and the NYPD were collectively and individually a substantial factor in bringing

17

about the aforesaid violations by the Individual Defendants of Plaintiff's rights under the Constitution and laws of the United States.

130. Accordingly, Defendant City of New York is liable for having substantially caused the foregoing violations of Plaintiff's constitutional rights and his injuries.

## FIFTH CLAIM FOR RELIEF

### N.Y.C. Admin. Code § 8-801 *et seq*.

### Denial of Liberty by Defendants Through the Manufacturing of False or Misleading Evidence and Suppression of Exculpatory Evidence

131. Plaintiff repeats and realleges each and every allegation set forth above.

132. The Individual Defendants are "covered individuals" as defined in N.Y.C. Admin. Code § 8-801.

133. The Individual Defendants manufactured false or misleading evidence and/or suppressed exculpatory evidence.

134. As a result, the Individual Defendants, acting under color of law, deprived Plaintiff of his rights under N.Y.C. Admin. Code § 8-802 to be free from unreasonable search and seizure.

135. As the employer of the Individual Defendants, the City is liable for Defendants' wrongful acts pursuant to N.Y.C. Admin. Code §§ 8-802 and 8-803.

136. Accordingly, Defendants are liable to Plaintiff for all his injuries and damages and for his attorneys' fees, costs, and expenses in bringing this action.

## SIXTH CLAIM FOR RELIEF

### N.Y.C. Admin. Code § 8-801 *et seq*.

### Unreasonable Seizure Pursuant to Legal Process by Defendants

137. Plaintiff repeats and realleges each and every allegation set forth above.

138. The Individual Defendants are "covered individuals" as defined in N.Y.C. Admin. Code § 8-801.

139. The Individual Defendants initiated criminal proceedings against Plaintiff without probable cause or legal justification.

140. Defendants acted with actual malice.

141. The criminal proceedings terminated in Plaintiff's favor.

142. As the employer of the Individual Defendants, the City is liable for Defendants' wrongful acts pursuant to N.Y.C. Admin. Code §§ 8-802 and 8-803.

143. Accordingly, Defendants are liable to Plaintiff for all his injuries and damages and for his attorneys' fees, costs, and expenses in bringing this action.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

a.  For compensatory damages in an amount to be determined at trial;

b.  For punitive damages to the extent allowable by law;

c.  For costs, disbursements, and reasonable attorneys' fees under 42 U.S.C. § 1988, N.Y.C. Admin. Code § 8-805, and the inherent powers of this Court;

d.  For pre- and post-judgment interest as allowed by law; and

e.  For such other and further relief as this Court deems just and proper.

Dated: March 3, 2022
New York, NY

THE FU FIRM PLLC

By: */s/ Yan Fu*
Yan Fu
43 W. 43rd Street, Suite 205
New York, NY 10036
(212) 584-0581
yfu@thefufirm.com
*Counsel for Plaintiff*