UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
VICTOR ABRAHAM,

                        Plaintiff,

        - against -

THE CITY OF NEW YORK, STEVEN LUTZ,
STEVEN ZIELINSKI, and JENNIFER HAMILTON,

                        Defendants.
------------------------------------------------------------------X

No. 22-CV-1162 (KAM)(RML)

**AMENDED COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff Victor Abraham, by his attorneys, The Fu Firm PLLC, as for his Amended Complaint, respectfully alleges, upon information and belief, as follows:

**PRELIMINARY STATEMENT**

1. This is a civil action pursuant to 42 U.S.C. §§ 1983 and 1988 in which Plaintiff seeks relief for the violation of his rights secured by the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

2. Plaintiff was deprived of his liberty before trial due to the unlawful withholding by members of the New York City Police Department ("NYPD") of exculpatory and impeachment evidence favorable to his defense, and their creation or reliance on false or misleading evidence and argument.

3. Plaintiff was ultimately acquitted at trial, but not before he spent time in jail due to the police misconduct alleged in this complaint. Plaintiff's prosecution and incarceration has had lasting effects; to this day, Plaintiff remains homeless due to the misconduct alleged herein.

4. The City of New York is liable because Plaintiff's constitutional injuries resulted from the policies, customs and practices of the New York City Police Department ("NYPD") that were deliberately indifferent to the liberty, fair trial, and due process rights of criminal defendants.

## JURISDICTION AND VENUE

5. This action arises under 42 U.S.C. §§ 1983 and 1988.

6. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343 as this action seeks redress for the violation of Plaintiff's constitutional and civil rights.

7. Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because Plaintiff's claims arose within the confines of this judicial district.

## THE PARTIES

8. Plaintiff, Victor Abraham, is a citizen and resident of the State of New York and the United States. He resides within the Eastern District of New York.

9. Defendant Steven Lutz ("Lutz" or "Det. Lutz") was, at all relevant times, a Detective employed by the NYPD, acting under color of State law, and who is sued in his individual capacity.

10. Defendant Steven Zielinski ("Zielinski" or "Sgt. Zielinski") was, at all relevant times, a Sergeant employed by the NYPD, acting under color of State law, and who is sued in his individual capacity.

11. Defendant Jennifer Hamilton ("Hamilton" or "PO Hamilton") was, at all relevant times, a Police Officer employed by the NYPD, acting under color of State law, and who is sued in her individual capacity.

12. Defendant City of New York (the "City") is a municipal corporation duly organized and existing under the laws of the State of New York. At all relevant times, Defendant City, acting through the NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision,

discipline, retention, and conduct of all NYPD personnel. In addition, at all relevant times, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obey the laws of the United States and the State of New York.

## FACTUAL ALLEGATIONS

### The October 9, 2016 Robbery of S.H.

13. On October 9, 2016, an individual named S.H. reported to the police that he was robbed by two individuals in front of 285 Heberton Avenue, Staten Island, New York. S.H. reported to the police that he was robbed by two Black males wearing hooded sweatshirts, and that one of the perpetrators displayed a handgun during the robbery.

14. Plaintiff was not involved in the October 9, 2016 robbery.

15. Defendant Steven Lutz was assigned to investigate the robbery.

16. On or around October 13, 2016, S.H. rode the S44 bus. While on the bus, S.H. saw an individual, who he believed to have been the robber with the gun, on the same bus.

17. S.H. took a photograph of this individual and sent the photograph to Det. Lutz.

18. Plaintiff did not ride the S44 bus on or around October 13, 2016, and therefore the person who S.H. saw and photographed could not have been Plaintiff.

19. Det. Lutz received and reviewed the photograph but did not add it to the case file.

20. Neither Det. Lutz nor S.H. informed the Office of the Richmond County District Attorney ("RCDA") about the S44 bus photograph until the eve of Plaintiff's criminal trial.

21. As a result, Plaintiff and his defense counsel were not aware of the photograph.

22. Det. Lutz did not turn over the photograph to the RCDA.

23. S.H. also did not turn over the photograph to the RCDA.

24. On or about October 16, 2016, S.H. viewed a photo array created by Det. Lutz.

25. The array included a photograph of Plaintiff and five "fillers."

26. S.H. identified Plaintiff as the robber with the gun.

27. The photo array identification procedure was unduly suggestive. Of the six individuals in the array, Plaintiff was the only one wearing a white shirt, while the individuals in the other photographs wore black or gray clothing.

28. On October 17, 2016, Plaintiff was arrested for the October 9, 2016 robbery.

29. On October 18, 2016, Det. Lutz conducted a lineup.

30. This lineup identification was tainted by the prior unduly suggestive photo array from just two days earlier.

31. S.H. identified Plaintiff as the robber.

32. Plaintiff was processed and held by the NYPD, then at Rikers Island, until October 27, 2016, when his family was able to post bail.

**The October 27, 2016 Attempted Robbery of A.L.**

33. On October 27, 2016, a 16-year-old individual named A.L. reported to the police that he was attacked by three individuals during an attempted robbery in front of 524 Port Richmond Avenue, Staten Island, New York.

34. The attack took place at night and while it was raining.

35. All three attackers wore sweatshirts with hoods over their heads.

36. The entire incident lasted less than ten seconds.

37. A.L. saw only one of the attackers and only for a couple of seconds.

38. Prior to the incident, A.L. was not familiar with Plaintiff.

39. Plaintiff was not involved in the October 27, 2016 attempted robbery.

4

40. NYPD officers, including Defendant Sgt. Zielinski, responded to the scene and interviewed A.L.

41. During the interview with Sgt. Zielinski, A.L. was still frightened and in emotional distress after the attempted robbery.

42. A.L. told the NYPD officers that one of the attackers was Black, tall, and skinny. He could not describe the other two attackers.

43. Sgt. Zielinski immediately showed A.L. a single photograph of Plaintiff. Sgt. Zielinski did not show A.L. any other photographs.

44. A.L. told Sgt. Zielinski that he was not sure if the person in the photograph was one of his attackers.

45. PO Hamilton was assigned to investigate the October 27, 2016 attempted robbery.

46. On October 29, 2016, A.L. went to an NYPD station to view photographs.

47. PO Hamilton conducted the viewing with A.L. using the NYPD's Photo Manager system. A.L. viewed the photographs one at a time using a computer. Plaintiff's photograph appeared as photograph #10. The exact same photograph of Plaintiff then appeared as photograph #11.

48. Plaintiff was the only individual whose photograph appeared twice in the set of photographs.

49. A.L. then identified Plaintiff as one of his assailants.

50. Plaintiff was rearrested on or around October 31, 2016.

**The Grand Jury Proceedings**

51. The individual Defendants testified at a grand jury on or around November 1, 2016.

52. The grand jury heard testimony that S.H. identified Plaintiff as one of the perpetrators in the October 9, 2016 robbery after the October 18, 2016 lineup and that A.L. identified Plaintiff as one of the assailants in the October 27, 2016 attack after the October 29, 2016 Photo Manager viewing.

53. However, the grand jury was not informed about the S44 bus photograph taken by S.H. or the flawed lineup procedure.

54. The grand jury was also not informed: (1) that A.L. was shown a single photograph of Plaintiff on October 27, 2016, (2) that A.L. could not identify Plaintiff with certainty after viewing the single photograph, or (3) about the flawed Photo Manager identification.

55. Without this material information that tended to show Plaintiff's innocence and/or impeached the credibility of the prosecution's witnesses, on November 2, 2016, the jury indicted Plaintiff for the October 9, 2016 robbery and the October 27, 2016 attempted robbery.

**The *Wade* Hearing**

56. On November 20, 2017, the Supreme Court, Richmond County, held a hearing to determine the admissibility of the identifications of Plaintiff.

57. In a written decision dated December 15, 2017, the Court (Garnett, J.), held that the October 16, 2016 photo array conducted by Det. Lutz with S.H. was unduly suggestive because Plaintiff was the only one depicted wearing a white shirt, while the other individuals wore dark or gray jackets or sweatshirts.

58. The Court also held that S.H.'s identification of Plaintiff in the October 18, 2016 lineup was tainted by the prior unduly suggestive photo array.

59. The Court suppressed both identifications made by S.H.

60. Even though he testified at the hearing, Det. Lutz withheld from the Court, the prosecution, and the defense that S.H. had taken and sent to him the S44 bus photograph.

61. During the hearing, the Assistant District Attorney ("ADA") admitted that Sgt. Zielinski's use of a single photograph of Plaintiff to elicit A.L.'s identification of Plaintiff as one of his assailants on October 27, 2016 was improper and unduly suggestive. The Court suppressed this identification.

62. The ADA also admitted that the Photo Manager identification conducted by PO Hamilton in which Plaintiff's photo appeared twice was unduly suggestive. The Court suppressed this identification.

63. The Court also suppressed a May 4, 2017 lineup identification made by A.L. of Plaintiff as unduly suggestive because only Plaintiff and one of the "filler" individuals wore white shirts.

**Detective Lutz Admits at Trial That He Failed to Preserve the S44 Bus Photo**

64. Plaintiff's jury trial was held in November 2018.

65. After jury selection, and on the first day of trial, the ADA revealed to Plaintiff's defense attorney that he had just learned from S.H. about the S44 bus photograph.

66. The ADA also informed Plaintiff's counsel that he did not receive a copy of the photograph from Det. Lutz, and the photograph could not be found.

67. During the trial, S.H. testified that, a few days after the robbery, he saw a person on the S44 bus who he believed was the person who had robbed him.

68. S.H. testified that this individual stood right across from him on the bus.

69. S.H. testified that he took the photograph in such a manner that the individual saw and knew that he was taking the picture.

70. S.H. testified that the individual in the photograph was not Plaintiff.

71. While he was on the stand, Det. Lutz testified that S.H. sent him the S44 bus photograph and told him that it looked like the robber with the gun.

72. Det. Lutz also admitted that he did not turn the photograph over to the RCDA and did not save a copy in the case records.

73. On November 7, 2018, Plaintiff was acquitted of the October 9, 2016 robbery of S.H. and the October 27, 2016 attempted robbery of A.L.

**Damages**

74. At the time he was first arrested, Plaintiff was 19 years old.

75. As a result of Defendants' actions, Plaintiff was incarcerated until approximately September 2017, when he was able to make bond. Thereafter, Plaintiff had to make more than a dozen court appearances before he was acquitted, and his ability to travel was restricted.

76. Plaintiff suffered and will continue to suffer mental and emotional suffering.

77. Plaintiff also suffered the loss of the services, society, companionship, and consortium of his family and friends.

78. While Plaintiff was incarcerated, he lost his Section 8 housing and experienced setbacks in his education. To this day, Plaintiff is still homeless.

79. Plaintiff also incurred legal fees and expenses.

# **FIRST CLAIM FOR RELIEF**

## **42 U.S.C. § 1983**

### **Denial of Due Process and a Fair Trial Under the Fifth, Sixth, and Fourteenth Amendments by Defendant Lutz**

80. Plaintiff repeats and realleges each and every allegation set forth above.

81. At all relevant times, Plaintiff had a clearly established right, pursuant to the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, *Brady v. Maryland*, 363 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), to timely disclosure of all material information that tended to show his innocence or that impeached the credibility of the prosecution's witnesses against him.

82. The S44 bus photograph was material information that tended to show Plaintiff's innocence or impeached the credibility of S.H.'s identification of Plaintiff.

83. Det. Lutz did not disclose the existence of the S44 bus photograph to the prosecution until the trial and, as a result, the defense was not aware of the photograph until the day that S.H. and Det. Lutz took the stand.

84. In addition, through his actions, Det. Lutz wholly denied the defense the use of the photograph at trial to show Plaintiff's innocence or impeach S.H.'s credibility.

85. The non-disclosure of the information favorable to the defense caused the initiation and continuation of the criminal proceedings against Plaintiff.

86. Accordingly, Defendant Lutz is liable to Plaintiff, pursuant to 42 U.S.C. §§ 1983 and 1988, for all his injuries and damages and for his attorneys' fees, costs, and expenses in bringing this action.

## **SECOND CLAIM FOR RELIEF**

### **42 U.S.C. § 1983**

**Denial of Liberty, Due Process, and a Fair Trial Under the Fourth, Fifth, Sixth, and Fourteenth Amendments by Defendants Lutz, Zielinski, and Hamilton Through the Manufacturing of False or Misleading Evidence
and Suppression of Exculpatory Evidence**

87. Plaintiff repeats and realleges each and every allegation set forth above.

88. An individual has a constitutional right, pursuant to the Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution, not to be deprived of his liberty based upon the deliberate preparation by a police officer and handing to a prosecutor of false or misleading evidence that would be reasonably likely to convince a jury of the individual's guilt, where such actions actually result in the individual's deprivation of liberty.

89. In addition, a criminal defendant has an analogous right to prompt disclosure by a police officer or detective, to the prosecutor, of exculpatory or other information that so undercuts the basis for the defendant's prosecution that it is likely to, or may, result in his release from custody.

90. Such information must be disclosed, among other reasons, because it would correct the false or misleading impression from other evidence that the police have provided to the prosecutor, or which the prosecutor has provided to the grand jury or to the court, regarding the strength of the prosecution's case.

91. Here, the strength of the prosecution's case was not only material to a determination whether to initiate and continue Plaintiff's prosecution, but also to the grand jury's discretionary determination whether to approve an indictment and to the court's determination whether to release Plaintiff from custody, pending trial, on reasonable bail.

92. Defendants Lutz, Zielinski, and Hamilton (the "Individual Defendants") prepared police reports and information that they knew, or should have known, were false or misleading with respect to Plaintiff's alleged involvement in the October 9, 2016 robbery and the October 27, 2016 attempted robbery.

93. Det. Lutz withheld exculpatory and/or impeachment evidence from the prosecution regarding the October 9, 2016 robbery, which in turn prevented the prosecutor from complying with his duty to provide the information to Plaintiff.

94. Det. Lutz also conducted unduly suggestive photo array and lineup identifications.

95. Sgt. Zielinski conducted an unduly suggestive single photo identification following the October 27, 2016 attempted robbery, which led A.L. to identify Plaintiff as one of the perpetrators. Sgt. Zielinski's actions tainted A.L.'s ability to thereafter accurately identify the perpetrator(s).

96. Sgt. Zielinski also failed to inform the RCDA that A.L.'s identification was equivocal.

97. PO Hamilton conducted an unduly suggestive photo identification on October 29, 2016.

98. The Individual Defendants forwarded their "evidence" to the RCDA, knowing and intending that such information would be relied upon by prosecutors in deciding whether to initiate and continue prosecution of Plaintiff, by a grand jury considering whether to indict Plaintiff, and by a court in setting bail.

99. At the same time, the Individual Defendants failed to disclose to prosecutors their knowledge of evidence tending to show that Plaintiff was innocent and that his accusers' identifications of him were unreliable.

100. Without the manufacturing of evidence and/or suppression of evidence by the Individual Defendants, the case against Plaintiff was weak because, as the Defendants knew, the complaining victims' identifications were unreliable and there was no other "evidence" tying Plaintiff to the alleged crimes.

101. Therefore, the Individual Defendants' use of suggestive identification methods, Det. Lutz's withholding of evidence favorable to the defense from the prosecutor, and Sgt. Zielinski's withholding from the prosecutor the fact that A.L.'s single photograph identification was equivocal, were highly significant to the RCDA's decision whether to prosecute, the grand jury's decision whether to indict, and to the criminal court's decision in setting bail.

102. The Individual Defendants' actions were a substantial cause of Plaintiff's prosecution, incarceration pending trial, and loss of liberty even after he was released from bail.

103. The Individual Defendants acted deliberately, intentionally, willfully, recklessly, and/or with deliberate indifference regarding Plaintiff's constitutional rights.

104. The Individual Defendants' actions shock the conscience.

105. Accordingly, the Individual Defendants are liable to Plaintiff, pursuant to 42 U.S.C. §§ 1983 and 1988, for all his injuries and damages and for his attorneys' fees, costs, and expenses in bringing this action.

### THIRD CLAIM FOR RELIEF

### 42 U.S.C. § 1983

**Unreasonable Seizure Pursuant to Legal Process Under The Fourth and Fourteenth Amendments by Defendants Lutz, Zielinski, and Hamilton**

106. Plaintiff repeats and realleges each and every allegation set forth above.

107. By the actions described above, Defendants Lutz, Zielinski, and Hamilton, acting under color of law, deprived Plaintiff of his rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable seizure pursuant to legal process.

108. By forwarding false or misleading information and/or withholding evidence from prosecutors that tended to show Plaintiff's innocence from the prosecution, and by failing to make a complete and full statement of facts to the grand jury, the Individual Defendants initiated a criminal proceeding against Plaintiff.

109. There was no probable cause to prosecute Plaintiff for the October 9, 2016 robbery or the October 27, 2016 attempted robbery.

110. The criminal proceedings terminated in Plaintiff's favor.

111. Defendants acted with actual malice.

112. Accordingly, the Individual Defendants are liable to Plaintiff, pursuant to 42 U.S.C. §§ 1983 and 1988, for all his injuries and damages and for his attorneys' fees, costs, and expenses in bringing this action.

## **FOURTH CLAIM FOR RELIEF**

### **42 U.S.C. § 1983**

### **Excessive Pretrial Detention Under the Fourth and Fourteenth Amendments by Defendant Lutz**

113. Plaintiff repeats and realleges each and every allegation set forth above.

114. An individual has a constitutional right, pursuant to the Fourth and Fourteenth Amendments to the Constitution, to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence.

115. Det. Lutz, through his actions, violated that right.

116. Det. Lutz's actions shock the conscience.

117. Accordingly, Defendant Lutz is liable to Plaintiff, pursuant to 42 U.S.C. §§ 1983 and 1988, for all his injuries and damages and for his attorneys' fees, costs, and expenses in bringing this action.

## FIFTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983

### *Monell* Liability Against the City of New York

118. Plaintiff repeats and realleges each and every allegation set forth above.

119. The foregoing violations of Plaintiff's federal constitutional rights and injuries were further directly, foreseeably, proximately, and substantially caused by conduct, chargeable to Defendant City, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiff, who are investigated, arrested, or prosecuted for alleged criminal activities by the New York City Police Department.

120. As the Supreme Court observed more than 50 years ago:

> "The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification … A major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification. A commentator has observed that 'the influence of improper suggestion upon identifying witnesses probably accounts for more miscarriages of justice than any other single factor -- perhaps it is responsible for more such errors than all other factors combined.' "

*United States v. Wade*, 388 U.S. 218, 228, 87 S. Ct. 1926, 1933 (1967) (quoting Wall, *Eye-Witness Identification in Criminal Cases* 26).

121. Despite the inherent risks of mistaken identification, prior to Plaintiff's arrest, policymaking officials at the NYPD implemented no or plainly inadequate policies, procedures,

regulations, practices, customs, training, supervision, and discipline concerning photographic and lineup identification methods that would protect the constitutional rights of the accused.

122. "The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." *Stovall v. Denno*, 388 U.S. 293, 302 (1967). Thus, the Second Circuit has "consistently condemned the exhibition of a single photograph as a suggestive practice, and where no extenuating circumstances justify the procedure, as an unnecessarily suggestive one." *Wiggins v. Greiner*, 132 F. App'x 861, 865 (2d Cir. 2005) (quoting *Mysholowsky v. People*, 535 F.2d 194, 197 (2d Cir. 1976)). This is because, "[b]y presenting only a single suspect to a witness, police convey an implicit message that 'this is the guy.'" *Gregory v. City of Louisville*, 444 F.3d 725, 755 (6th Cir. 2006).

123. Despite the condemnation of exhibition of a single photograph without extenuating circumstances as an "unnecessarily suggestive" practice, at all relevant times, the NYPD had a policy of allowing officers to show a single photograph to an alleged victim for the purpose of identifying a suspect, even when there are no extenuating circumstances or any justification to do so.

124. For example, at all relevant times, neither the NYPD Patrol Guide nor the NYPD Detective Guide, in establishing investigative identification procedures, prohibited or limited the exhibition of a single photograph to a crime victim to identify a perpetrator.

125. In addition, it is well-established that repeated identification procedures, especially repeated *suggestive* identification procedures, with the same witness and suspect, leads to artificially elevated levels of eyewitness confidence and misidentification. *See Foster v. California*, 394 U.S. 440, 442-43 (1969) (holding that successive unduly suggestive police lineups made it "all but inevitable" that the victim would identify the petitioner as the perpetrator);

*Solomon v. Smith*, 645 F.2d 1179, 1185 (2d Cir. 1981) (affirming grant of habeas corpus and holding that successive showings of the petitioner to the victim, which began with an uncertain photo array identification and included single photograph and "show-up" procedures, were constitutionally infirm); *see also* Wells, Gary L., et al., *Policy and Procedure Recommendations for the Collection and Preservation of Eyewitness Identification Evidence*, Law and Human Behavior, Vol. 44, No. 1 25, annexed hereto as Exhibit 1.

126. Therefore, for example, the United States Department of Justice published a guide in 1999 recommending best practices and procedures for the criminal justice community to employ in investigations involving eyewitnesses. *See* Technical Working Group for Eyewitness Evidence, *Eyewitness Evidence: A Guide for Law Enforcement*. Among the policies and procedures for preparing a mug book is the instruction to "[e]nsure that only one photo of each individual is in the mug book." *Id.* at 17.

127. The Photo Manager viewing conducted with A.L. on October 29, 2016 was essentially a mug book viewing.

128. However, at all relevant times to this action, the NYPD had a policy that allowed officers to show an individual's photograph multiple times in a mug book or Photo Manager viewing.

129. This policy resulted in Plaintiff's photograph appearing twice in the Photo Manager viewing conducted by Defendant Hamilton with A.L. on October 29, 2016.

130. In addition, at all relevant times, the NYPD had policies that allowed repeated identification procedures with the same witness and the same suspect. These policies lacked safeguards to prevent misidentification.

131. In this case, NYPD policies allowed the Individual Defendants to subject S.H. to an October 16, 2016 photo array viewing (which was later suppressed as unduly suggestive) and an October 18, 2016 lineup (which was later suppressed as tainted by the unduly suggestive photo array).

132. In addition, the Individual Defendants subjected A.L. to an October 27, 2016 single photograph viewing (which was later suppressed as unduly suggestive), an October 29, 2016 Photo Manager viewing (which was later suppressed as unduly suggestive), and a May 4, 2017 line-up (which was later suppressed as unduly suggestive).

133. Thus, through the use of repeated unduly suggestive identification procedures, the Individual Defendants manufactured: (1) the identification by S.H. of Plaintiff as the perpetrator of the October 9, 2016 robbery and (2) the identification by A.L. of Plaintiff as the perpetrator of the October 27, 2016 attempted robbery.

134. At the same time Defendant City had policies that tolerated the violation of accused individuals' constitutional rights through unduly suggestive and unreliable identifications, it put substantial pressure on officers and detectives to close cases by developing probable cause and making arrests.

135. Thus, Defendant City allowed and encouraged NYPD officers to lead witnesses to make mistaken identifications and forward the information to prosecutors.

136. These identifications were then presented by prosecutors to grand juries, courts, and at trial.

137. These identifications were relied upon at various stages of the criminal justice process, including by grand juries in deciding whether to indict and courts in deciding whether, and in what amount, to set bail.

138. As a result, constitutional rights of accused individuals, including Plaintiff, were violated.

139. The above-described deliberate or de facto policies, procedures, regulations, practices and/or customs were implemented or tolerated by policymaking officials for Defendant City, including but not limited to, the New York City Police Commissioner, who knew (or should have known):

  a. to a moral certainty that such policies, procedures, regulations, practices and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases;

  b. that such issues either present police employees with difficult choices of the sort that instruction, training and/or supervision will make less difficult or that the need for further instruction, training, supervision and/or discipline was demonstrated by a history of police employees mishandling such situations as well as the incentives that police employees have to make the wrong choice; and

  c. that the wrong choice by such employees concerning such issues will frequently cause the deprivation of the constitutional rights of criminal suspects or defendants and cause them constitutional injury.

140. Under the principles of municipal liability for federal civil rights violations, the City's Police Commissioner (and/or his or her authorized delegates), has final responsibility for training, instructing, supervising, and disciplining police personnel with respect to the investigation and prosecution of criminal matters, the documentation of information obtained during investigations, and the disclosure to prosecutors of evidence.

141. The Police Commissioner, personally and/or through authorized delegates, at all relevant times had final authority, and constitutes a City policymaker for whom the City is liable, with respect to compliance by NYPD employees with the abovementioned constitutional requirements.

142. During all times relevant to this Complaint, the Police Commissioner owed a duty to the public at large and to Plaintiff, which he or she knowingly and intentionally breached, or to which he or she was deliberately indifferent, to implement policies, procedures, customs, practices, training, and discipline sufficient to prevent or deter conduct by subordinates violating the constitutional rights of criminal suspects or defendants and of other members of the public.

143. The above-mentioned policies, procedures, regulations, practices, and/or customs of Defendant City were collectively and individually a substantial factor in bringing about the violations of Plaintiff's rights under the Constitution and laws of the United States.

144. Accordingly, Defendant City of New York is liable for having substantially caused the foregoing violations of Plaintiff's constitutional rights and his injuries.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

a. For compensatory damages in an amount to be determined at trial;

b. For punitive damages to the extent allowable by law;

c. For costs, disbursements, and reasonable attorneys' fees under 42 U.S.C. § 1988 and the inherent powers of this Court;

d. For pre- and post-judgment interest as allowed by law; and

e. For such other and further relief as this Court deems just and proper.

Dated: June 30, 2022
New York, NY

                                  THE FU FIRM PLLC

                                  By: */s/ Yan Fu*
                                       Yan Fu
                                       43 W. 43rd Street, Suite 205
                                       New York, NY 10036
                                       (212) 584-0581
                                       yfu@thefufirm.com
                                       *Counsel for Plaintiff*