*** Filed ***
12:08 PM, 13 Apr, 2026
U.S.D.C., Eastern District of New York

# Identification Procedures: Photo Arrays and Line-ups

## Model Policy

*March 2015*

NEW YORK STATE | Municipal Police Training Council

New York State Division of Criminal Justice Services
80 South Swan Street, Albany, New York 12210

www.criminaljustice.ny.gov

NEW YORK STATE | Municipal Police Training Council

# Identification Procedures: Photo Arrays and Line-ups Model Policy

STATE OF NEW YORK
Division of Criminal Justice Services
Office of Public Safety

## Copyright Notice

© March 2015 by the New York State Division of Criminal Justice Services. You are hereby granted a non-exclusive license to use the enclosed materials for non-commercial use, and to reproduce, copy and/or distribute these materials for educational purposes. The Division's materials contained in this publication may be included in a non-commercial derivative work with proper attribution to the New York State Division of Criminal Justice Services. These materials may not be posted on a commercial or non-commercial Internet site without the prior written permission of the Division. This non-exclusive license will be governed and construed in accordance with the laws of the State of New York.

THE 2015 EDITION IS PUBLISHED BY THE:

New York State Division of Criminal Justice Services
Office of Public Safety
80 South Swan Street
Albany, New York 12210

http://www.criminaljustice.ny.gov

VERSION March 2015

PRINTED IN THE UNITED STATES OF AMERICA

# Identification Procedures: Photo Arrays and Line-ups Model Policy

The Identification Procedures: Photo Arrays and Line-ups Model Policy is intended to allow for the individual needs of each of the police departments in New York State regardless of size or resource limitations. Police and district attorneys are encouraged to customize these protocols to meet their regional needs, while being mindful of the intent of the policy. As with all model policies adopted by the Municipal Police Training Council (MPTC), this policy is non-binding upon agencies within NYS and is meant to serve as a guide to be used in developing a department's individual policy.

The Municipal Police Training Council (MPTC) approved the model policy in March 2015.

## Acknowledgements

The District Attorney's Association of the State of New York "Photo Identification Guidelines", the District Attorney's Association of the State of New York "Line-up Procedure Guidelines", the International Association of Chiefs of Police "Eyewitness Identifications Model Policy", the National Academy of Sciences report titled: "Identifying the Culprit: Assessing Eyewitness Identification", and the recommendations made by the New York State Justice Task Force in their document titled: "Recommendations for Improving Eyewitness Identifications" served as a basis for this model policy.

The New York State Division of Criminal Justice Services (DCJS) acknowledges the extensive work done by the following associations and agencies:

District Attorney's Association of the State of New York

New York State Association of Chiefs of Police

New York State Police

New York City Police Department

New York State Sheriff's Association

New York State Office of Victim Services

# Identification Procedures: Photo Arrays and Line-ups Model Policy

Municipal Police Training Council

## I Purpose

The purpose of this policy is to establish guidelines on how to conduct fair and reliable eyewitness identifications.

This policy is intended to allow for the individual needs of each of the police departments in New York State regardless of size or resource limitations. Police and district attorneys are encouraged to customize these protocols to meet their regional needs, while being mindful of the intent of the policy. As with all model policies adopted by the Municipal Police Training Council (MPTC), this policy is non-binding upon agencies within NYS and is meant to serve as a guide to be used in developing a department's individual policy.

There is a body of work that supports the reliability and accuracy of identification procedures conducted close in time to the commission of the crime, frequently a photo array identification, using the methods outlined within this policy. Currently, however, evidence from photo array identification procedures is not admissible at trial in New York State. The MPTC feels strongly that evidence from a photo array identification procedure conducted with safeguards contained in this model policy should be admissible pursuant to CPL 60.25 or 60.30. The MPTC unanimously agrees that CPL 60.25 and 60.30 should be amended promptly to allow for the admissibility of photo array evidence.

Video or audio recording of the identification procedure is endorsed by the MPTC only if testimony regarding the identification procedure and resulting identification is admissible at trial pursuant to CPL 60.25 or 60.30. This conditional endorsement is not, however, meant to discourage agencies who are recording their procedures from continuing to do so.

## II Policy

It is anticipated that the use of eyewitness identification procedures will assist law enforcement in identifying potential suspects and maximize the reliability of those identifications.

## III Definitions

A. **Photo array**: A collection of photographs that are shown to a witness to determine if the witness can recognize a person involved with the crime.

B. **Line-up**: A collection of individuals, either sitting or standing in a row, who are shown to a witness to determine if the witness can recognize a person involved with the crime.

C. **Suspect**: Person the police believe has committed the crime.

D. **Filler:** A person, other than the suspect who is used in either a live line-up or a photo array.

E. **Administrator:** The person who is conducting the identification procedure.

F. **Blind Administrator:** A term used to describe the administrator of the procedure where the administrator does not know the identity of the suspect.

G. **Blinded Procedure:** A description of the procedure, meaning that the administrator may know who the suspect is, but by virtue of the procedure's administration, the administrator is unable to inadvertently provide cues to the witness. For example, the use of a folder or envelope to conceal an array from the administrator, blinds the procedure.

H. **Double-blind Procedure:** Where a blind administrator is used, the procedure is considered to be double-blind.

I. **Confidence Statement:** A statement from an eyewitness immediately following their identification regarding their confidence or certainty about the accuracy of their identification. The witness should be asked to provide their level of certainty in their own words as opposed to using a numerical scale.

## IV Photo Arrays

A. Selection of fillers

1. Fillers should be similar in appearance to the suspect in the array.

2. Similarities should include gender, clothing, facial hair, race, age, height, extraordinary physical features, or other distinctive characteristics.

3. An administrator should not use a filler if the administrator is aware that the filler is known to the witness.

4. There should be at least five fillers, in addition to the suspect.

5. Only one suspect should be in each array.

6. If there is more than one suspect, then different fillers should be used in separate arrays for each suspect.

7. Photo quality, color and size should be consistent. Administrators should ensure that the photos do not contain any stray markings or information about the subject. Color and black and white photos should not be mixed.

8. Any identifying information contained on any of the photos should be covered and those areas of the other photos used should be similarly covered.

B. Inviting the witness to view the array

1. When a suspect is known and the investigator calls a witness to arrange for the viewing of a photo array, the investigator should simply advise the witness that he/she intends to conduct an identification procedure and should not say anything about the suspect. For example, the investigator should say to the witness: "We'd like you to come in to view a photo array in connection with the crime committed on (*date and location*)."

2. The investigator should avoid addressing whether or not a person is in custody unless specifically asked.

3. Investigators should give no opinion on their perception of the witness's ability to make an identification.

4. Investigators should not inform the witness about any supporting evidence such as confessions, other ID's, or physical evidence that may have been obtained.

5. Witnesses should be prevented from speaking to the victim and any other witnesses about the identification procedure when they arrive to view the array.

C. Instructions to witness

1. Consideration should be given to providing written instructions to the witness. The instructions should be communicated in various languages when appropriate. The instructions should be read to the witness and signed by the witness after being read.

2. Before the procedure begins, the administrator should tell the witness what questions will be asked during the identification procedure.

3. The investigator should tell the witness that as part of the ongoing investigation into a crime that occurred on (*date*) at (*location*) the witness is being asked to view the photo array to see if the witness recognizes anyone involved with the crime.

4. These instructions let the witness know that they should not seek assistance from the administrator in either making a selection or confirming an identification. They also address the possibility of a witness feeling any

self-imposed or undue pressure to make an identification. The instructions are as follows:

a. The perpetrator may or may not be pictured.

b. Do not assume I know who the perpetrator is.

c. I want you to focus on the photo array and not to ask me or anyone else in the room for guidance about making an identification during the procedure.

5. Instructions to the witness about the quality of the photographs.

a. Individuals presented in the photo array may not appear exactly as they did on the date of the incident because features such as head and facial hair are subject to change.

b. Photographs may not always depict the true complexion of a person; it may be lighter or darker than shown in the photo.

c. Pay no attention to any markings that may appear on the photos, or any other differences in the type or style of the photographs.

6. The witness should be informed that if they make an identification at the conclusion of the procedure they will be asked to describe their level of certainty about that identification in their own words and should avoid using a numerical scale of any kind.

7. The witness should be advised that the investigation will continue regardless of whether or not they make an identification.

8. Where the procedure is to be recorded by the use of audio or video, the witness should be informed prior to the start of the procedure, and their consent should be requested prior to the recording.

a. The witness should sign the form indicating their consent or lack of consent.

b. If the witness does not consent, the officer should not record the procedure.

D. Administering the procedure

1. Photo arrays must always be conducted using either a “blinded procedure” or “double-blind procedure”. A “double-blind” procedure is preferable where circumstances allow and it is practicable.

2. One method to accomplish a blinded procedure is by placing the array into a folder before handing it to the witness. Additional methods can be employed to further enhance the “blinded” nature of the procedure, such as:

   a. “Two person shuffle” – the array is assembled by an officer other than the investigator and then it is placed into a folder for the investigating officer.

   b. “One person shuffle” – multiple arrays are created by the investigating officer and the suspect’s position is different in each. Three folders containing the arrays are provided to the witness who selects one to use.

3. Regardless of the method of administration that is to be used, the administrator should be positioned in such a way so that they are not in the witness’ line of sight during the viewing of the array. Where practicable, the administrator should still be able to view the witness and hear what they say.

4. If there are multiple witnesses viewing the array, they should be prevented from speaking to each other about the identification procedure before, during, and after the process.

5. The witnesses must view the array separately. Multiple copies of the same array may be used for the same suspect for each new witness viewing the array.

6. To protect the integrity of the identification procedure, the administrator must remain neutral so as not to, even inadvertently, suggest a particular photograph to the witness.

7. Attention should be given to the location of the procedure so that the witness is not influenced by items in the room such as wanted posters or BOLO (be on the lookout) information.

E. Post viewing questions

1. After viewing the array ask the witness the following questions:

a. Do you recognize anyone?

b. If so, what number photograph do you recognize?

c. From where do you recognize the person?

2. If the witness' answers are vague or unclear, the administrator will ask the witness what he or she meant by the answer.

3. Confidence Statement

a. Ask the witness to describe his/her certainty about any identification that is made.

b. Ask the witness to use his/her own words and not a numerical scale.

F. Documentation

1. Document any changes made to any of the photographs used.

2. Document where the procedure took place, who was present, the date and time it was administered.

3. Preserve the photo array in the original form that was shown to each witness.

4. Each witness should complete a standardized form after viewing the array and the actual array used should be signed and dated by each witness.

5. Recording the Procedure

a. The entire identification procedure should be memorialized and documented in the most reliable way possible. Where practicable and appropriate, the procedure should be memorialized using audio or video recording - provided that the procedure to be recorded is admissible in a court of law, pursuant to CPL 60.25 or 60.30.

b. Where the procedure is to be recorded by the use of audio or video, the witness' consent should be obtained and documented on a form prior to recording. If the witness does not consent to the recording, the officer should not record the identification procedure and should request that the witness sign a form saying he/she refused to be recorded.

c. Audio or video recording may not always be possible or practicable. Some reasons that may prevent the identification procedure from being recorded include, but are not limited to: witness safety; recording equipment malfunctions; recording equipment is not available; identification procedure is conducted at a location not equipped with recording devices and the reasons for using that location are not to subvert the intent of this policy, e.g., the witness is out of state, in a hospital or is in a correctional facility; inadvertent error or oversight occurs that was not the result of intentional conduct of law enforcement personnel.

6. Any physical or verbal reaction to the array should be memorialized in a standardized manner. If this is done in writing, anything said by the witness should be verbatim.

7. The confidence statement should be documented verbatim.

8. Where an identification is made, complete a CPL 710.30 Notice. Note: Failure to provide this notice could prevent its use in court.

G. Speaking with the witness after the procedure

1. The administrator, or other appropriate person, should document the statements, comments or gestures of the witness regarding the identification procedure before talking with the witness about next steps.

2. Once the identification procedure is concluded and documented, the administrator can talk to the witness about how the case will proceed or what the next steps in the case may be.

3. The administrator should not comment or make gestures on the identification itself by saying things such as: “Great job” or “We knew you would recognize him” or even nodding his/her head in agreement.

4. The witness should be told not to discuss what was said, seen, or done during the identification procedure with other witnesses, nor should the investigator discuss any other identification procedures with the witness.

H. All members who will be involved in the administration of a photo array shall receive training on how to properly administer photo arrays.

## V Live Line-ups

A. Selection of fillers

1. Fillers should be similar in appearance to the suspect in the line-up.

2. Similarities should include gender, clothing, facial hair, race, age, height, extraordinary physical features, or other distinctive characteristics.

3. An administrator should not use a filler if the administrator is aware that the filler is known to the witness

4. Where practicable there should be five fillers, in addition to the suspect, but in no case should there be less than four fillers used.

5. Only one suspect should appear per line-up.

6. If necessary, all members of the line-up should be seated to minimize any differences in height.

7. If there is more than one suspect, then different fillers should be used in separate line-ups for each suspect.

8. The suspect should be allowed to pick his position within the line-up. If a prior identification was made using a photo array that number should be avoided unless insisted upon by the suspect.

9. The fillers must be instructed not to speak with each other or make unnecessary gestures. All members of the line-up should be instructed to remain still, hold the placard, and look forward unless instructed otherwise by the security officer.

B. Inviting the witness to view the line-up

1. When an investigator calls a witness to arrange for the witness to view a line-up, the investigator should simply ask the witness to come in for the identification procedure and should not say anything about the suspect. For example, the investigator should say to the witness: “We’d like you to come in to view a line-up in connection with the crime you witnessed on (*date and location*).”

2. Investigators should give no opinion on their perception of the witness’ ability to make an identification.

3. Unless the witness specifically asks the investigator if someone is in custody, the witness should not be informed that an arrest has been made and that the police have a suspect that the witness will be viewing.

4. Investigators should not inform the witness about any supporting evidence such as confessions, other IDs, or physical evidence that may have been obtained.

5. Witnesses should be prevented from speaking to the victim or any other witnesses about the identification procedure when they arrive to view the line-up.

C. Instructions to witness

1. Consideration should be given to providing written instructions to the witness. The instructions should be communicated in various languages when appropriate. The instructions should be read to the witness and signed by the witness after being read.

2. Before the procedure begins, the administrator should tell the witness what questions will be asked during the identification procedure.

3. The investigator should tell the witness that as part of the ongoing investigation into a crime that occurred on (*date*) at (*location*) the witness is being asked to view the line-up to see if the witness recognizes anyone involved with that crime

4. These instructions let the witness know that they should not seek assistance from the administrator in either making a selection or confirming an identification. They also address the possibility of a witness feeling any self-imposed or undue pressure to make an identification. The instructions are as follows:

   a. The perpetrator may or may not be present.

   b. Do not assume I know who the perpetrator is.

   c. I want you to focus on the line-up and not to ask me or anyone else in the room for guidance about making an identification during the procedure.

   d. Individuals presented in the line-up may not appear exactly as they did on the date of the incident because features, such as head and facial hair, are subject to change.

5. Instructions to the witness about line-up members moving, speaking, or changing clothing:

   a. Consideration should be given to telling the witness that the line-up members can be asked to speak, move or change clothing, if requested.

b. If one line-up member is asked to speak, move, or change clothing then all the line-up members will be asked to do the same.

6. The witness should be informed that if they make an identification at the conclusion of the procedure they will be asked to provide their level of certainty in their own words, and not by using a numerical scale.

7. The witness should be advised that the investigation will continue regardless of whether or not they make an identification.

8. Where the procedure is to be recorded by the use of audio or video, the witness should be informed prior to the start of the procedure, and their consent should be requested prior to the recording.

a. The witness should sign the form indicating their consent or lack of consent.

b. If the witness does not consent, the officer should not record the procedure.

D. Administering the procedure

1. Where practicable, taking into account resource limitations, a blind administrator should be used to conduct and administer a line-up, but a blind administrator is not required to conduct a line-up.

2. After the instructions are given, the administrator – whether a blind administrator or the investigator in the case – should stand away from the witness during the line-up, in a neutral manner, while still being in a position to observe the witness. The key is for the administrator to stand outside the witness' line of sight while the witness is viewing the line-up. This will reduce any inclination by the witness to look at the administrator for guidance.

3. Where practicable, consideration should be given to avoid viewings of the suspect in multiple identification procedures in which the same witness is asked to view the same suspect. For example, where a witness makes an identification from a photo array and a line-up is subsequently conducted, consideration should be given to avoid showing subsequent witnesses both a photo array and a line-up with the same suspect.

4. Witnesses must view the line-up separately.

5. If there are multiple witnesses viewing the line-up, they should be prevented from speaking to each other about the identification procedure before, during, and after the process.

6. The position of the suspect should be moved each time the line-up is shown to a different witness, assuming the suspect and/or defense counsel agree.

7. Attention should be given to the selection of a neutral location for the procedure so that the witness is not influenced by items in the room such as wanted posters or BOLO (be on the lookout) information.

8. The security officer who is monitoring the suspect and fillers in the line-up room should remain out of view of the witness. This will eliminate the potential for any claims of inadvertent suggestions by the security officer and it also removes the potential for distracting the witness as the line-up is being viewed.

E. Post-viewing questions

1. After viewing the line-up the witness should be asked:

   a. Do you recognize anyone?

   b. If so, what is the number of the person that you recognize?

   c. From where do you recognize the person?

2. If the witness' answers are vague or unclear, the administrator will ask the witness what he or she meant by the answer.

3. Confidence statement

   a. Ask the witness to describe his/her certainty about any identification that is made.

   b. Ask the witness to use his/her own words and not a numerical scale

F. Documenting the procedure

1. Recording the Procedure

   a. The entire identification procedure should be memorialized and documented in the most reliable way possible. Where practicable and appropriate the procedure should be memorialized using audio or video recording.

   b. Where the procedure is to be recorded by the use of audio or video, the witness' consent should be obtained and documented by the use of a form prior to recording. If the witness does not consent to the recording, the officer should not record the identification procedure

and should have the witness sign a statement indicated they refused to be recorded.

c. Audio or video recording may not always be possible or practicable. Some reasons that may prevent the identification procedure from being recorded include, but are not limited to: witness safety concerns; recording equipment malfunctions; recording equipment is not available; identification procedure is conducted at a location not equipped with recording devices and the reasons for using that location are not to subvert the intent of this policy, e.g., the witness is out of state, in a hospital or is in a correctional facility; inadvertent error or oversight occurs that was not the result of intentional conduct of law enforcement personnel.

d. The line-up should be preserved by photograph. The witness should sign the photograph to verify that it is the line-up that he or she viewed.

2. Any physical or verbal reaction to the line-up should be memorialized in a standardized manner. If this is done in writing, anything said by the witness should be verbatim.

3. The confidence statement should be documented verbatim.

4. Document where the procedure took place, who was present, the date and time it was administered.

5. Anything the line-up members are asked to do (e.g., speak, move, or change clothing) must be documented.

6. Document all people in the viewing room with the witness and the line-up room with the suspect.

7. Document the officer or person who escorts the witnesses to and from the line-up room.

8. Document requests made by the defense counsel and whether they were granted, and if not, why not. Reasonable requests from defense counsel should be honored and documented. Any defense request for a change in the line-up that is not, or cannot be, honored must also be documented.

9. Where an identification is made, complete a CPL 710.30 Notice. Note: Failure to provide notice of the identification could prevent its use in court.

G. Defendant's right to counsel

1. There are circumstances where during a line-up a suspect may have a defense attorney that is present.

2. Investigators should consult with their District Attorney's Office for guidance regarding a defendant's right to counsel.

3. When in attendance, the defense attorney must be instructed not to speak in the viewing room when the witness is present.

H. Speaking with the witness after the procedure

1. The administrator, or other appropriate person, should document the statements, comments or gestures of the witness regarding the identification procedure before talking with the witness about next steps.

2. Once the identification procedure is concluded and documented, the administrator can talk to the witness about how the case will proceed or what the next steps in the case may be.
3. The administrator should not comment or make gestures on the identification itself by saying things such as: "Great job" or "We knew you would recognize him" or even nodding their head in agreement.

4. The witness should be told not to discuss what was said, seen, or done during the identification procedure with other witnesses, nor should the investigator discuss any other identification procedures with the witness

I. All members who will be involved in the administration of a live line-up shall receive training on how to properly administer line-ups.

# LINE-UP FORM

## WITNESS INSTRUCTIONS

**READ THE FOLLOWING TO THE WITNESS PRIOR TO SHOWING THE LINE-UP**

- ☐ With your consent, the procedure will be recorded using video or audio.
- ☐ Do you consent to recording? Video and Audio ☐ Audio Only ☐ No ☐ Initial: ______
- ☐ As part of our on-going investigation into a crime that occurred at (*location*) on (*date*) you are about to view a line-up. (*Use similarly neutral language to invite witness to the identification procedure.*)
- ☐ You will look through a one-way mirror and see six people in the line-up. They will not be able to see you.
- ☐ There will be a number associated with each person on the other side of the mirror.
- ☐ Take whatever time you want to view the line-up.
- ☐ The perpetrator may or may not be present.
- ☐ Do not assume I know who the perpetrator is.
- ☐ I want you to focus on the line-up and not look to me or anyone else in the room for guidance about making an identification during the procedure.
- ☐ Individuals presented in the line-up may not appear exactly as they did on the date of the incident because features, such as head and facial hair, are subject to change.
- ☐ Members of the line-up can be requested to speak, move, or change clothing.
- ☐ If one line-up member is asked to speak, move, or change clothing then all the line-up members will be asked to do the same.
- ☐ If you do make an identification I will ask you to describe your level of certainty about that identification using your own words.
- ☐ After you have had an opportunity to view the line-up I will ask you the following questions:
  1. Do you recognize anyone?
  2. If you do, what is the number of the person you recognize?
  3. From where do you recognize the person?
  4. **ONLY IF AN ID IS MADE:** In your own words describe your certainty about the choice that you have made. Avoid using numbers.
- ☐ I may ask follow up questions.
- ☐ The investigation will continue regardless of whether or not you make an identification.
- ☐ **DO NOT discuss with other witnesses what you see, say or do during this procedure.**

**WITNESS MUST SIGN**

The above instructions have been read to me. ______________________________ Date:______________

THIS PAGE OF THE FORM **MUST NOT** BE SHOWN TO THE WITNESS

# LINE-UP CASE INFORMATION SHEET

Complaint or Case Report #:______________ Crime Date & Location: ____________________

Line-up Date: __________Time: ___________ Location: ________________________________

Crime Committed: ______________Witness' Name: __________________________________

Was Witness Transported? Yes ☐ No ☐

Transporting Officer: ____________________________________________________________

Rank: ___________ Command: ___________ ID #: ___________

Line-up Administrator: ___________________________________________________________

Rank: ___________ Command: ___________ ID #: ___________

Investigating Officer: ____________________________________________________________

Rank: ___________ Command: ___________ ID #: ___________

Security Officer: ________________________________________________________________

Rank: ___________ Command: ___________ ID #: ___________

Asst. District Attorney Present? Yes ☐ No ☐

Name of ADA: _____________________________________ Phone #: ____________________

Interpreter Present? Yes ☐ No ☐ Name: _________________________________________

Was the procedure video recorded? Video Only ☐ Audio & Video ☐ Audio Only ☐ No ☐

Line-up photograph taken? Yes ☐ No ☐ Witness initialed? Yes ☐ No ☐

| Position | Name | Number Held | Age | Height | Weight |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |

Suspect's name:________________________ D.O.B. ____________________ Position:______

Comments: ______________________________________________________________________

_______________________________________________________________________________

Signature of Administrator: _____________________________________ Date: _____________

# LINE-UP FORM

## RUNNING THE LINE-UP AND RESULTS

Witness:______________________________ Administrator: ______________________________

**Instructions to the administrator conducting the line-up:**

- Remain neutral. Do not comment on the identification before, during or after the identification procedure.
- After instructing the witness, stand away and out of the witness' line of sight, while still being able to observe and hear the witness.
- Where practicable and appropriate, video record the entire procedure.
- If video or audio recording obtain consent from the witness.
- A photo should be taken of the line-up and the witness should sign the photo to attest that it represents the line-up that they viewed.
- Introduce by name all individuals present in the viewing room to the witness.
- Tell the witness when the identification procedure will begin, (e.g. "You will now look through the one way mirror.")
- If there is a need to have a line-up member speak, move, change clothing, or some other activity, then all the line-up members must do the same activity.
- Complete the entire CASE INFORMATION SHEET that accompanies this form.

## AFTER THE WITNESS HAS VIEWED THE LINE-UP, ASK THE FOLLOWING QUESTIONS

☐ Did you recognize anyone in the line-up? ______________________________

- **If the answer to the preceding question is negative, STOP and go to the signature line.**
- **If the answer is positive, proceed to the next question:**

☐ If so, what is the number of the person that you recognize? ______________________________

☐ From where do you recognize that person? ______________________________

Record the words and gestures of the witness: ______________________________

______________________________________________________________________

## CONFIDENCE STATEMENT

In your own words describe your certainty about the choice that you have made. Avoid using numbers. ______________________________________________________________________

______________________________________________________________________

Date: ______________ Time: ______________ Witness Signature: ______________________________

# LINE-UP FORM

## DEFENSE COUNSEL SHEET

Suspect's Attorney Present? Yes ☐ No ☐

Defense Attorney: ____________________________ Telephone: ___________________________

The Defense Attorney was instructed ***not*** to speak while in the viewing room with the witness.

Yes ☐ No ☐

If Defense Attorney makes requests about the line-up, record the request and whether the request was agreed to or refused:

1. Request: ______________________________________________________________________

   Agreed ☐ Refused ☐

   Reason for refusal? ____________________________________________________________

   ________________________________________________________________________________

2. Request: ______________________________________________________________________

   Agreed ☐ Refused ☐

   Reason for refusal? ____________________________________________________________

   ________________________________________________________________________________

3. Request: ______________________________________________________________________

   Agreed ☐ Refused ☐

   Reason for refusal? ____________________________________________________________

   ________________________________________________________________________________

# PHOTO ARRAY FORM

## WITNESS INSTRUCTIONS

**READ THE FOLLOWING TO THE WITNESS PRIOR TO SHOWING THE PHOTO ARRAY**

- ☐ With your consent, the procedure will be recorded using video or audio.
- ☐ Do you consent to recording? Video and Audio ☐ Audio Only ☐ No ☐ Initial: ______
- ☐ As part of the ongoing investigation into a crime that occurred on (*date*) at (*location*) you will view a photo array. (*Use similarly neutral language to invite witness to the identification procedure.*)
- ☐ It consists of six photographs of individuals. Each photograph has a number underneath the photograph.
- ☐ Take whatever time you want to view the photo array.
- ☐ The perpetrator may or may not be pictured.
- ☐ Do not assume that I know who the perpetrator is.
- ☐ I want you to focus on the photo array and not look to me or anyone else in the room for guidance about making an identification during the procedure.
- ☐ Individuals presented in the photo array may not appear exactly as they did on the date of the incident because features, such as head and facial hair, are subject to change.
- ☐ Photographs may not always depict the true complexion of a person; it may be lighter or darker than shown in the photo.
- ☐ Pay no attention to any markings that may appear on the photos, or any other difference in the type or style of the photographs.
- ☐ If you do make an identification I will ask you to describe your level of certainty about that identification using your own words.
- ☐ After you have had an opportunity to view the photo array I will ask you the following questions:
  1. Do you recognize anyone?
  2. If you do, what is the number of the person you recognize?
  3. From where do you recognize the person?
  4. **ONLY IF AN ID IS MADE:** In your own words describe your certainty about the choice that you have made. Avoid using numbers.
- ☐ I may ask follow up questions.
- ☐ The investigation will continue regardless of whether or not you make an identification.
- ☐ **DO NOT discuss with other witnesses what you see, say or do during this procedure.**

**WITNESS MUST SIGN**

The above instructions have been read to me. ______________________________ Date:______________

THIS PAGE OF THE FORM **MUST NOT** BE SHOWN TO THE WITNESS

# PHOTO ARRAY CASE INFORMATION SHEET

Complaint or Case Report #:_____________ Crime Date & Location: __________________

Photo Array Date: _________Time: __________ Location: __________________________

Crime Committed: _____________Witness' Name: _______________________________

Was Witness Transported? Yes ☐ No ☐

Transporting Officer: ________________________________________________________

Rank: __________ Command: __________ ID #: __________

Photo Array Administrator: ___________________________________________________

Rank: __________ Command: __________ ID #: __________

Investigating Officer: ________________________________________________________

Rank: __________ Command: __________ ID #: __________

Interpreter Present? Yes ☐ No ☐ Name: _________________________________________

Was the procedure video recorded? Video Only ☐ Audio & Video ☐ Audio Only ☐ No ☐

**The original photo array MUST be preserved.**
**Attach a copy of the photo array to this form and provide the information below, if available.**

| Position | Name | NYSID (where applicable) | Date of Photo |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |

Suspect's name:________________________ D.O.B. _________________ Position: _____

Was any photo altered? Yes ☐ No ☐

If yes, which? ______________________________________________________________

Describe the alteration: _______________________________________________________

Comments: _________________________________________________________________

Signature of Administrator: __________________________________ Date: ____________

# PHOTO ARRAY FORM

## SHOWING THE PHOTO ARRAY

Witness:______________________________ Administrator: ______________________________

**Instructions to the administrator showing the photo array:**

- Remain neutral. Do not comment on the identification before, during or after the identification procedure.
- Provide the photo array in an envelope or folder when handing it to the witness.
- Stand out of the witness' line of sight, where practical, but still observe the witness as the witness views the photo array.
- Where practicable and appropriate, video record the entire procedure.
- If video or audio recording obtain consent from the witness.
- Complete the entire CASE INFORMATION SHEET that accompanies this form.

## AFTER THE WITNESS HAS VIEWED THE ARRAY, ASK THE FOLLOWING QUESTIONS

☐ Did you recognize anyone in the photo array? ______________________________________

- **If the answer to the preceding question is negative, STOP and go to the signature line.**
- **If the answer is positive, proceed to the next question:**

☐ If so, what is the number of the person that you recognize? __________________________

☐ From where do you recognize that person? _________________________________________

Record the words and gestures of the witness: ________________________________________

_____________________________________________________________________________

_____________________________________________________________________________

_____________________________________________________________________________

## CONFIDENCE STATEMENT

In your own words describe your certainty about the choice that you have made. Avoid using numbers._____________________________________________________________________

_____________________________________________________________________________

_____________________________________________________________________________

Date: _____________ Time: _____________ Witness Signature: __________________________