*** Filed *** 12:08 PM, 13 Apr, 2026 U.S.D.C., Eastern District of New York

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND - CRIMINAL TERM - PART 1
-------------------------------------X Indictment No.
THE PEOPLE OF THE STATE OF NEW YORK : 295/16

-against- : ROB 1

VICTOR ABRAHAM, :
DEFENDANT.
-------------------------------------X Jury Trial

26 Central Avenue
Staten Island, New York 10301
October 31, 2018

B E F O R E:

HONORABLE WILLIAM E. GARNETT

Justice

A P P E A R A N C E S:

MICHAEL E. MC MAHON, ESQ.
District Attorney - Richmond County
BY: MICHAEL TANNOUSIS, ESQ.
and
MATTHEW MOBILIA, ESQ.
Assistant District Attorneys

LAW OFFICE OF ROBERT "BOB" WALTERS, P.C.
Attorney for the Defendant
1825 Park Avenue - Suite 1102
New York, New York 10035
BY: R. "BOB" WALTERS, ESQ.

* * * * * *

KARYN S. GUTKIN
SENIOR COURT REPORTER

kg

COURT CLERK: Part 14 is now in session, the Honorable William E Garnett presiding.

Calling calendar number three, Indictment 295 of 2016, Victor Abraham. Step up.

Appearances, for the record.

MR. MOBILIA: Matthew Mobilia, for the People.

MR. TANNOUSIS: Michael Tannousis, for the office of the Richmond County district attorney.

Good morning, Judge.

MR. WALTERS: Good morning, Judge.

Bob Walters, for Victor Abraham.

THE COURT: Good morning.

Gentlemen, are we prepared to continue?

MR. TANNOUSIS: Yes.

THE COURT: Who are the People going to call?

MR. TANNOUSIS: Detective Jennifer Hamilton.

THE COURT: In regard to the--

MR. TANNOUSIS: Photo manager.

THE COURT: --photo manager?

MR. TANNOUSIS: Yes.

THE COURT: To the complainant, Alex LaPierre?

MR. TANNOUSIS: Yes.

THE COURT: Are there any issues we need to take up before Detective Hamilton testifies?

MR. TANNOUSIS: Yes, there is.

I just wanted to run it by your Honor, that I plan on introducing the report that was generated, where Mr. LaPierre-- the original report where Mr. LaPierre identified the defendant, with the defendant's single photo, as well as the report generated by Detective Hamilton as to what was stated to her when he identified. It's the same report--

THE COURT: She is going to testify to that, isn't she?

MR. TANNOUSIS: She is. It's the same report, though, that I put in the hearing, which I can hand up to your Honor.

Additionally, Judge, I wanted to have admitted into evidence the pictures, all the photos from the photo manager that I also admitted at the hearing, which are all the photos that the victim viewed.

THE COURT: We don't have the pictures, you just have printouts here, right?

COURT OFFICER: (Handing).

THE COURT: Oh, I see, I see.

MR. TANNOUSIS: Yes.

THE COURT: Have you shown these to Mr. Walters?

MR. WALTERS: May I see them, your Honor?

MR. TANNOUSIS: Yes, they are the same exact evidence that was put in the hearing, which was also

emailed to Mr. Walters, prior to today.

THE COURT: Okay, okay. Let him see it.

COURT OFFICER: (Handing).

MR. WALTERS: Your Honor?

THE COURT: Yes, sir.

MR. WALTERS: This is going to take a lot of parsing, because one of the problems is the prejudice that accrues by showing the jury a mug book where it's presumed that you're not in here unless you're a criminal.

And as far as I'm concerned, as far as I know, Mr. Abraham has zero criminal convictions. So I don't understand how a jury is going to be able to disassociate Mr. Abraham from a book that is full of so-called criminals.

That's going to be the lay notion, that this is book full of criminals, isn't that nice, and look at Mr. Abraham, he is not only there once, he's there twice.

So I don't know how this prejudice can be ameliorated.

THE COURT: I have a suggestion, if you will hand it up to me.

COURT OFFICER: (Handing).

THE COURT: Is there anything else besides that that you want to make--

MR. WALTERS: Well, your Honor, and the fact that

so atypically, horrendously atypically, he is number 10 and 11.

THE COURT: Are you interested in making a point of that, should I--

MR. WALTERS: There is absolutely a point.

THE COURT: --should I change the exhibit?

MR. WALTERS: Well, your Honor, I don't know how you can change it, seeing that that is not how the witness was able to look at it. He looked at it with two of the same photos. Now, if that doesn't jump out--

THE COURT: I'm not saying deleting the two photographs.

MR. WALTERS: Well, there shouldn't be two photographs in it, your Honor, that's just--

THE COURT: Okay, I want-- because I have something in my mind, but I'm going to take a couple of minutes, I have something in my mind how to eliminate what you discussed.

But I want to know whether, should I-- if I do what I have in mind, should I leave both 10 and 11 there, or do you want to just leave 10 there.

MR. WALTERS: No, 10 and 11, your Honor, because that's part of the process that is troublesome, the fact that there are two. And so we will just argue it, because then the notion of having--

THE COURT: Okay, so if my compromise is to crop these photographs and have Hamilton testify that by the time LaPierre said, Come over here, this is the guy--

MR. WALTERS: But how do they get around having two of the same photos?

THE COURT: I'm saying, if you want to make that argument, do you want to make it with the photographs in front to the jury or do you want to make it with the just one photograph?

MR. WALTERS: No, your Honor, it has to be two, because the two is the improper--

THE COURT: Okay, okay.

MR. WALTERS: --the improper procedure that they used there. And there's really no-- there's no salvaging having the two photos side by side, that makes it forever unfair.

THE COURT: All right.

MR. WALTERS: And, your Honor, we haven't even gotten around to the missing witness yet.

THE COURT: One thing at a time, that comes when we get to the precharge conference, I will do one thing at a time. Okay, let me take this and take a look at it.

These are-- so we begin with the front page and I see Mr. Abraham at the-- he is the last photograph on the second page; is that correct?

MR. WALTERS: Photographs.

THE COURT: Well, I'm just trying to locate them. Right?

MR. TANNOUSIS: Correct, yes. If I can just--

THE COURT: Okay. Whatever you want to argue, I'm trying to accommodate you, Mr. Walters.

MR. WALTERS: I think the accommodation, your Honor, should be a total prohibition, because you can't have two photos and say that is not jumping out at a witness.

THE COURT: Then I'm going to give you the option on cross-examination of bringing it out. Let me-- I'm going to take a recess and do what I think is right here, and then we will proceed.

And do the People have any other witnesses?

MR. TANNOUSIS: No, we do not, Judge. I do have, however, also photographs of injuries to Alex LaPierre, that I would also like to be introducing through Detective Hamilton.

THE COURT: Hamilton saw him?

MR. TANNOUSIS: She saw him, yes, she saw him after the incident.

THE COURT: All right, show them to Mr. Walters while I'm in looking at these things. I will be right out.

This other exhibit, the one has been marked five--

MR. WALTERS: I never asked him, did he, in the rain, did he have--

THE COURT: I'm asking the People, this Five, what is this?

MR. TANNOUSIS: I'm sorry, Judge, can I just see, did I mix something in?

THE COURT: (Handing).

COURT OFFICER: (Handing).

MR. TANNOUSIS: Judge, this is the actual report that was generated where she actually-- the victim actually signed the picture that he viewed. And this is the report that she generated for identification.

So I was looking to seek to put those pictures in and the report.

THE COURT: All right, I will make a ruling in a few minutes. Give me a couple of minutes and I will be right with you.

(Whereupon, there is a pause in the proceedings.)

(Pre-marked two photographs for identification, People's 6 and People's 7, as of this date.)

COURT CLERK: Recalling case on trial.

THE COURT: Counselors, what I did in chambers was go over the material contained in the proposed

exhibit. I did find that some of the material beneath and above the photographs to be prejudicial; however, the issues here is what photographs were actually shown to the complaining witness, Mr. LaPierre.

So what I've done, with the assistance of the clerk, is cut out the photographs that were displayed.

So the first five that were viewed by LaPierre, I put a number one on the backs, just with the faces of the people. I will give you the opportunity to see them, just let me lay them out first. And the first one with Mr. Abraham, I put a number two in the back.

Now, refresh my recollection, if you would, the way these were displayed to LaPierre was one at a time?

MR. TANNOUSIS: Correct. In a full page.

MR. WALTERS: Wait, a page with about eight people?

MR. TANNOUSIS: No, no, no, he viewed one picture at a time and kept clicking and went to the next one.

THE COURT: That was my understanding.

MR. WALTERS: But when he's clicking, he sees two pictures with the picture that he has already seen before. That's the argument.

THE COURT: You will argue that.

Now, in regard-- now, the strip I have has Mr. Abraham is in the 10th position on the second strip.

On the third strip, in the number 11 position, he is the first.

Now--

MR. WALTERS: So, if I might, your Honor--

THE COURT: No, no, let me get this on the record first, okay?

MR. WALTERS: I'm sorry.

THE COURT: All right.

There again, it would be my inclination then, if it's one picture at a time and LaPierre then moves to the second picture, then I would, at the request of the defense, whatever the defense wants, I would just cut Mr. LaPierre's picture out and it would be identified as the 11th one that Mr. LaPierre viewed.

MR. TANNOUSIS: Judge, if I may, he identified him in number 10, so he didn't even look at number 11 until he saw number 10, and that's when he called the detective over and said, This is the guy that told me to run my pockets.

THE COURT: Well, how did they get to 11, then?

MR. TANNOUSIS: Because the detective told him, Continue looking at the photos, maybe you may recognize the other individuals.

THE COURT: Okay, that's part of what happened then.

MR. TANNOUSIS: Right.

THE COURT: Okay, so then it seems to me that 11 is still something that should be part of this.

MR. WALTERS: How can he recognize the other individuals when he says prior, I got no idea what they look like? So who is he going to recognize?

THE COURT: This is what you argue to the jury, this is not part of this adding this piece of evidence. You argue that to the jury, Mr. Walters, you know that.

So I'm not contending that in any way, but I'm giving you the option, do you want to, as part of Hamilton's testimony, have it come in that the next photo that he saw after seeing Mr. LaPierre-- Mr. Abraham in the 10th position was also Mr. Abraham in the 11th position?

MR. WALTERS: Your Honor, I'm more concerned with the historical backdrop of photo arrays. And I understand that some progress has been made, but without an instruction to the jury--

THE COURT: Well, that's the next thing I have. Okay?

MR. WALTERS: Then I will be silent and listen.

THE COURT: Okay. I propose this instruction:

Ladies and gentlemen, Detective Hamilton has testified that she asked Alex LaPierre to view photos at the precinct.

The police obtain photos of many people from a variety of sources and for different purposes. You must not infer from the fact that the police obtained a photo of the defendant, that the defendant committed this or any other crime.

Now, what I've done, I've modified that from the New Pattern Instruction online regarding-- it's entitled Limiting Instruction On Identification By Photograph. And that's what I would tell the jury at the conclusion of her testimony.

MR. WALTERS: Well, the instruction is okay, your Honor. I think that they should be told that-- well, I don't know if they do get photos from the Department of Motor Vehicles, but it seems to me--

THE COURT: It says from different-- from a variety of sources and for different purposes.

These have no markings on them besides the faces of the individuals.

MR. WALTERS: I'm just worrying just--

THE COURT: You can ask her that, if they get photographs from other sources. You have to be careful.

MR. WALTERS: Is it the mere notion that somebody is in a mug book indicate that they had previous wrongdoing, your Honor? I'm not sure the instruction can cure that.

THE COURT: I'm going to do my best and that's my inclination, because the door was opened.

So ultimately it comes down to this, Mr. Walters, what do you want me to do with this third strip? Just take your client's photograph and take away the others, or leave them all together?

MR. WALTERS: I would say we just leave it as is, your Honor.

THE COURT: Okay, so I will leave it as three.

So I've marked them again, can you look at the back, one, two and three.

So I will give those to the People, as they are the proponent of the evidence.

COURT OFFICER: (Handing).

THE COURT: And at the conclusion of Detective Hamilton's testimony, I will instruct them. I'm not going to allow the People to put in the single photograph signed by Mr. LaPierre, that will not be part of the exhibits.

So the exhibit will be those strips and the testimony of the-- the evidence will be the strips and the testimony of Detective Hamilton. Okay?

MR. TANNOUSIS: Judge, just a quick question for grammatic purposes?

THE COURT: Yes.

MR. TANNOUSIS: Obviously, I will be allowed to elicit from Detective Hamilton that he did look at the photo manager, he did look at a substantial amount of photos beyond just these photos that I am putting in, but these are the ones we are admitting into evidence.

THE COURT: I thought he got to these-- let me get my findings of fact at the hearing. That wasn't my recollection. Wait, hang on.

(Whereupon, there is a short pause in the proceedings.)

THE COURT: Here is what I wrote in my decision at the Wade hearing:

On October 29, 2016, Police Officer Hamilton had the complainant view approximately 449 photos, one at a time, at the precinct by means of the Photo Management System.

The officer had requested photos by inputting a description for a male black or Hispanic, 16 to 20 years old, 5-8 to 5-11, weighing between 100 to 180 pounds.

When the witness reached photo number 10, a photo of the defendant, he identified the person as the person who attempted to rob him. He also identified the next photograph, number 11, as his assailant.

Photos number 10 and 11 were exactly the same. Photos one through nine depicted male blacks.

I don't think he ever got-- he didn't look at 449 photographs, he looked-- he was beginning his examination when he pointed out Mr. Abraham's photo. So that I wouldn't allow, that he did not-- that would be a misrepresentation, that he looked at all those photographs and picked out Mr. Abraham.

MR. TANNOUSIS: No, no, Judge, I'm sorry, I should have been more clear. What I meant was that even after he identified Mr. Abraham in number 10, that he continued to look through the photo manager for the other possible perpetrators. That's what I meant to say.

Is that something that I can elicit from the witness?

THE COURT: After he said number 10 and number 11 is the guy?

MR. TANNOUSIS: Yes, Detective Hamilton then said, Okay, continue looking, maybe it will trigger your memory, maybe you will be able to identify the other perpetrators.

THE COURT: So after that, she was looking for the codefendants; is that right?

MR. TANNOUSIS: Exactly, yes.

THE COURT: No, I wouldn't allow that.

MR. TANNOUSIS: Okay, no problem.

THE COURT: Okay, all right. Do you want to

speak to Hamilton as to my limitations on her testimony?

MR. TANNOUSIS: Yes, yes, please, Judge.

THE COURT: All right, five minutes, and then let the sergeant and the clerk of the Court know that you are ready.

I'm going to step off.

(Whereupon, there is a pause in the proceedings.)

COURT CLERK: Recalling case on trial.

THE COURT: Are the People ready to proceed?

MR. TANNOUSIS: Yes, Judge.

THE COURT: All right, let's bring the jury in.

(Whereupon, there is a short pause in the proceedings.)

COURT OFFICER: Ready for the jury, your Honor?

THE COURT: Yes, we are.

COURT OFFICER: Jury entering.

(Whereupon, the jury enters the courtroom.)

COURT CLERK: Do both sides waive the reading of the roll?

MR. TANNOUSIS: Yes.

MR. WALTERS: So waived.

COURT CLERK: Are the jurors properly seated and satisfactory to the People?

MR. TANNOUSIS: Yes.

COURT CLERK: And to the defense?

MR. WALTERS: Yes.

THE COURT: All right.

Good morning, ladies and gentlemen, we will continue.

The People may call their next witness.

MR. TANNOUSIS: Thank you, Judge.

The People call to the stand Detective Jennifer Hamilton.

THE COURT: Detective Hamilton, please.

(Whereupon, there is a short pause in the proceedings.)

COURT OFFICER: Ready for the witness, your Honor?

THE COURT: Yes, we are.

COURT OFFICER: Witness entering.

(Whereupon, the witness enters the courtroom.)

THE COURT: Detective, put your things down first. Step up. Raise your right hand and face the clerk.

J E N N I F E R H A M I L T O N, Detective, NYPD, Shield 2299, Staten Island Robbery Squad, called as a witness by the People of the State of New York, having been first duly sworn, was examined and testifies as follows:

COURT CLERK: Have a seat. State your name.

THE WITNESS: Jennifer Hamilton.

COURT CLERK: Spell your last name for the record.

THE WITNESS: Last name is H-A-M-I-L-T-O-N.

COURT CLERK: Shield number?

THE WITNESS: 2299.

COURT CLERK: And command?

THE WITNESS: The Staten Island Robbery Squad.

THE COURT: All right, detective, would you just move that microphone closer to you. It bends. That's good.

THE WITNESS: Sure.

THE COURT: And keep your voice up, okay?

THE WITNESS: Sure.

THE COURT: Thank you very much. Good morning.

THE WITNESS: Good morning.

THE COURT: Mr. Tannousis, go ahead.

MR. TANNOUSIS: Thank you, Judge.

DIRECT EXAMINATION
BY MR. TANNOUSIS:

Q Good morning, detective.
A Good morning.
Q Where are you currently assigned?
A I'm assigned to the Staten Island Robbery Squad.
Q And how long have you been assigned to the Staten Island Robbery Squad?

A A little over two years.
Q And what are your duties at the Staten Island Robbery Squad?
A We investigate robberies.
Q How long have you worked for the New York City Police Department?
A 13 years.
Q Can you please give the jury a brief synopsis of your career with the New York City Police Department?
A I've work in the 120 for five years as a patrol officer. And after that I was a domestic violence police officer for six years. And since then I have been in Robbery for over two years.
Q And in your career with the New York City Police Department, how many arrests have you either made or participated in?
A I would say hundreds.
Q Were you assigned to the Staten Island Robbery Squad back in October of 2016?
A Yes.
Q And did there come a time you were assigned to investigate a robbery that occurred on October 27, 2016 in front of 524 Port Richmond Avenue, here in Richmond County?
A Yes.
Q And is that address the Denino's Pizzeria?

A Yes.
Q Was anyone arrested with respect to that investigation?
A Yes.
Q Do you see that individual in the courtroom today?
A Yes.
Q Can you please point to him and identify an article of clothing that he is wearing?
A He is wearing a teal shirt and a gray jacket.
THE COURT: Indicating the defendant, for the record, the detective pointed to.
Q Pursuant to the investigation, did you interview a victim in this case?
A Yes.
Q Would that be Alexander LaPierre?
A Yes.
Q Were you provided a physical description of the suspect-- of an individual, the perpetrator by Alexander LaPierre?
A Yes.
Q What was that description?
MR. WALTERS: Objection.
THE COURT: Sustained.
MR. WALTERS: May we approach, your Honor?
THE COURT: Yes, step up.

(Whereupon, an off the record discussion was held at the bench.)

THE COURT: The objection is sustained.

MR. TANNOUSIS: I withdraw the question, Judge.

Q Now, did you speak to Alexander LaPierre?

A Yes.

Q And based on your conversation, were you able to ascertain if he saw the face of an individual?

A Yes.

MR. WALTERS: Objection. How can she ascertain whether he saw the face?

THE COURT: The objection is sustained. The answer is stricken.

Q I want to direct your attention to October 29, 2016. Were you at One Edgewater Plaza on that day?

THE COURT: That was One Edgewater Plaza?

MR. TANNOUSIS: Correct.

A On October 29th, yes.

Q Yes, October 29, 2016.

And is that where the Staten Island Robbery Squad is located?

A Yes.

Q Did Alexander LaPierre meet you at the robbery squad on that day?

A Yes.

kg

Q What was the purpose of meeting you-- what was the purpose of him meeting you on that day?
A To view an NYPD database called photo manager, to view photos.
Q Okay. Can you just very briefly tell the jury what photo manager is?
A It's an NYPD computer-based system that allows the victim to give us a physical description of the subject and we put it in the system, and it automatically shows photos.
Q Okay. And are those photos viewed one and a time?
A Yes.
Q So is it-- so it's one photo on the screen at one time?
A Yes.
Q And does the individual viewing it have to click on to go to the next photo?
A Yes.
Q So did Alexander LaPierre view photo manager on that day?
A Yes.
Q Was it based on a description he gave?
A Yes.
Q Were any instructions given to Alexander prior to viewing the photo manager?
A Yes.

Q What was the instruction given to him?
A I had asked him to inform me if he recognized anyone in regards to this investigation, to let me know.
Q While he was on the photo manager, what were you doing?
A I was sitting on another table, away from him.
Q And he was on the computer?
A Yes.
Q At any point, did he call you over?
A Yes.
Q How far into him viewing the computer, did he call you over?
A About 10 photos.
THE COURT: After he had seen 10 photos?
THE WITNESS: Yes.
Q And what happened when he called you over?
A He informed me that the depicted person that was in the photo was the person who told him to run his pockets.
THE COURT: Which photo?
THE WITNESS: It was photo 10.
Q Now, was that individual in any other photos?
A Yes.
Q What number of photo was that individual in also?
A 10 and 11.
Q But he called you over when it was number 10?

A Yes.
Q He called you over at number 10?
A Yes.
Q And is number 10 the defendant, Victor Abraham?
A Yes.
Q Now, I'm handing you #8 for identification--

THE COURT: Do you want to segregate these or integrate them, making them one 8A, 8B and 8C?

MR. TANNOUSIS: Yes.

THE COURT: So just indicate for the officer which one you want displayed to the officer-- to the detective, I'm sorry.

(People's Exhibits 8A, 8B and 8C, photographs, marked for identification, as of this date.)

THE COURT: You separated them?

MR. TANNOUSIS: Yes.

THE COURT: So they are now marked People's 8A, 8B and 8C for identification?

MR. TANNOUSIS: Yes, sir.

THE COURT: And they're being viewed now by Mr. Walters.

COURT OFFICER: (Handing).

THE COURT: They are being handed now to the detective.

COURT OFFICER: (Handing).

Q Okay, now, detective, what were you just handed?

A The photos from photo manager.

Q Okay. Now, are those the photos that Alexander LaPierre looked at?

A Yes.

Q Okay. Now, who is in position number 10 in those photos?

A Victor Abraham.

Q Who is in position number 11 in those photos?

A Victor Abraham.

Q And are those the photos-- are one through nine the photos that he looked at prior to calling you over?

A Yes.

MR. TANNOUSIS: Your Honor, I would like to admit 8A, B and C into evidence.

THE COURT: Any objection?

MR. WALTERS: Voir dire, your Honor?

THE COURT: Go ahead.

VOIR DIRE

BY MR. WALTERS:

Q Please tell the ladies and gentlemen of the jury why there would be two photos next to each other in a photo manager computer that has single photos with no other doubles except Mr. Abraham, please tell that to the jury?

THE COURT: That is not a voir dire.

MR. WALTERS: Okay.

Q Having a second photo, that is not proper, is it?

MR. TANNOUSIS: Objection.

THE COURT: Do you have anything in regard to the foundation, authentication of the photographs?

MR. WALTERS: Yes.

THE COURT: Then please question the witness. You will have greater latitude on cross-examination.

Q Isn't that a photo manager that was tampered with by someone, if two people of the same--

THE COURT: Mr. Walters, I will ask you to sit down if you don't have anything else.

MR. WALTERS: All right, we will get to it.

THE COURT: Thank you, sir, thank you.

Do you object?

MR. WALTERS: Indeed, I do.

THE COURT: Okay. The objection is overruled. These photographs will be admitted into evidence as exhibits 8A, 8B and 8C.

(Whereupon, the aforementioned Photographs were remarked as People's Exhibits 8A, 8B and 8C in evidence, as of this date.)

MR. TANNOUSIS: May I continue, Judge?

THE COURT: Yes.

MR. TANNOUSIS: I am now publishing it to the

members of the jury.

(Photos are displayed on screen.)

MR. TANNOUSIS: Your Honor, can you dim the lights?

THE COURT: Sure.

MR. TANNOUSIS: Thank you.

(Lights dimmed)

CONTINUED DIRECT EXAMINATION

BY MR. TANNOUSIS:

Q Detective, what are we looking at?

A So we're looking at the photos from photo manager.

Q And these are the photos that Alexander LaPierre looked at?

A Yes.

Q Once again, where would position number 10 be?

MR. WALTERS: If it's once again, your Honor, then I object to asked and answered.

THE COURT: Overruled.

A Number 10 and 11.

Q Can you just tell the members of the jury, while they're viewing the photos, where position number 10 is?

A If you look at the second row, the last photograph is number 10, and the third row would be the first photo, would be 11.

Q Okay. So the way that the photo manager came would be

the first five photos on the top and then the second five and the third five?

A Yes.

Q So there are 15 photos there, correct?

A Yes.

THE COURT: Well, are you sure that the witness looked at the four after number 11, on the third row?

THE WITNESS: Yes.

THE COURT: All right, go ahead.

Q I am now also showing you People's 6 and 7 already marked for identification.

COURT OFFICER: (Handing).

THE COURT: Officer, may I see those.

COURT OFFICER: (Handing).

THE COURT: These have been shown to Mr. Walters. Now they will be shown to the detective.

COURT OFFICER: (Handing).

Q Do you recognize those photos, detective?

A Yes.

Q What are those photos of?

A These are the photos of the victim's injuries.

Q Is that Alexander LaPierre?

A Yes.

Q Are those injuries a fair and accurate depiction of his injuries after this incident?

A Yes.

MR. TANNOUSIS: At this time, Judge, I would like to move People's 6 and 7 into evidence.

THE COURT: Do you know where those photographs were taken, where he was at the time of the--

THE WITNESS: Yes.

THE COURT: Where was he?

THE WITNESS: He was inside the 121 Precinct.

THE COURT: And did you see him there?

THE WITNESS: I saw him the following day, when I met with him in person.

THE COURT: Do they fairly and accurately depict what those same parts of his body looked like when you saw him--

THE WITNESS: Yes.

THE COURT: --on the 29th of October?

THE WITNESS: Yes.

THE COURT: Any objection?

MR. WALTERS: None, your Honor.

THE COURT: Without objection, these exhibits will be marked in evidence as People's 6 and 7.

(Whereupon, the aforementioned Photographs were remarked as People's Exhibits 6 and 7 in evidence, as of this date.)

MR. TANNOUSIS: Thank you.

I will now publish them to the members of the jury.

(People's 6 is displayed on screen.)

Q I'm now publishing People's 6 in evidence.

What are we looking at, detective?

A The injury to his knee.

Q Is that Alex LaPierre's knee?

A Yes.

Q Is that what it looked like?

A Yes.

Q Now publishing People's 7.

What are we looking at here, detective?

(People's 7 is displayed on screen.)

A Lacerations to his hand.

Q And is that Alex LaPierre's hand?

A Yes.

MR. TANNOUSIS: Nothing further, Judge.

THE COURT: Mr. Walters, you may cross-examine the witness.

MR. WALTERS: Yes.

THE COURT: Do you want the lights down or do you want them back up?

MR. WALTERS: No, no.

THE COURT: Okay.

(Lights turned on.)